Dennis **MILLHOLLIN** and Michelle Millhollin, Plaintiffs,

v.

**FORD MOTOR CREDIT CO.**, a corporation, and Dee Thomason Ford, a corporation, Defendants.

Darrell **MESSINGER**, Plaintiff,

v.

**FORD MOTOR CREDIT CO.**, a corporation, and Marv Tonkin Ford Sales, Inc., a corporation, Defendants.

Donna M. **EATON**, Plaintiff,

v.

**FORD MOTOR CREDIT CO.**, a corporation, and Bud Meadows Mazda, Inc., a corporation, Defendants.

David P. **ANDRESEN**, Plaintiff,

v.

**FORD MOTOR CREDIT CO.**, a corporation, and Webster-Wolford Ford, Inc., a corporation, Defendants.

Civ. Nos. 75–334PA, 76–475PA, 76–575PA and 76–1090PA.

United States District Court, D. Oregon.

Dec. 31, 1981.

Richard A. Slottee, Portland, Or., for plaintiffs Millhollin * and Eaton.

Richard E. Fowlks, Lynch & Fowlks, Portland, Or., for plaintiff Messinger.

James C. Waggoner, John L. Langslet, Martin, Bischoff, Templeton & Biggs, Portland, Or., for plaintiff Andresen.

Herbert H. Anderson, Spears, Lubersky, Campbell & Bledsoe, Portland, Or., for defendant Ford Motor Credit Company.

Michael J. Esler, Keane, Haessler, Harper, Pearlman & Copeland, Portland, Or., for defendants Dee Thomason Ford and Webster-Wolford Ford.

John H. Holmes, Stephen J. Smith, Jensen, DeFranco, Holmes & Schulte, Portland, Or., for defendant Bud Meadows Mazda, Inc.

Terry W. Baker, Tonkon, Torp & Galen, Portland, Or., for defendant Marv Tonkin Ford Sales, Inc.

\* Although plaintiffs spell their name "Millhollin," throughout this litigation their name has been misspelled as "Milhollin." Because legal research catalogs and computers are governed by the principle of consistency, not correctness, I feel constrained to adhere to the erroneous spelling.

## OPINION AND ORDER

PANNER, Judge:

These four Truth-in-Lending cases reach me on remand from the Ninth Circuit. Plaintiffs purchased automobiles from dealers and financed their purchases through use of a standard retail installment contract. The contracts were assigned to defendant Ford Motor Credit Company (FMCC), a finance company. As required by the Truth-in-Lending Act (TILA), 15 U.S.C. § 1631, and Federal Reserve Board Regulation Z, 12 C.F.R. § 226.6(a), the first page of each contract disclosed important information on the terms of the agreement. Not mentioned on the first page, however, was a clause in the contract allowing FMCC the right to accelerate payment of the full debt upon purchaser's default. FMCC exercised that right in each case.

Plaintiffs commenced four separate suits alleging various violations of the TILA and Regulation Z. In *Milhollin v. Ford Motor Credit Corporation*, Civ. No. 75–334 (D.Or. 1976), FMCC was found to have violated Regulation Z by failing to identify itself as a creditor, failing to disclose the acceleration clause on the face of the contract, and failing to adequately describe its security interest. In *Eaton v. FMCC*, Civ. No. 76–475 (D.Or.1976), this court adopted the reasoning of *Milhollin* and found the same violations. In *Messinger v. FMCC*, Civ. No. 76–575 (D.Or.1977), and *Andresen v. FMCC*, Civ. No. 76–1090 (D.Or.1977), although numerous violations were alleged, this court found that FMCC violated the Act by failing to clearly disclose that it was a creditor. No consideration was then given to further alleged violations.[1]

*Milhollin, Eaton, Messinger* and *Andresen* were consolidated for appeal to the Ninth

1. Multiple violations of the Act in any single credit transaction results in only one recovery. 15 U.S.C. § 1640(g) (1976).

Circuit. The Court of Appeals found it necessary to address only a few of the alleged violations. *Milhollin, et al. v. FMCC*, 588 F.2d 753 (9th Cir. 1978).

First, the court found that assuming FMCC was a creditor, its status was adequately disclosed. 588 F.2d at 757. In light of that holding, the Court of Appeals remanded *Messinger* and *Andresen* for consideration of other alleged violations of the Act not treated by this court.

Second, the Court of Appeals agreed with the district court in *Milhollin* and *Eaton* that the Act imposes a general acceleration clause disclosure requirement. 588 F.2d at 757–58. The Court of Appeals disagreed, however, that an acceleration clause is a default charge. The Court based its holding on the narrower ground that Regulation Z provides that a creditor must "disclose the acceleration clause and its effect on unearned interest on the face of the contract." 588 F.2d at 757, *citing St. Germain v. Bank of Hawaii*, 573 F.2d 572, 577 (9th Cir. 1977). Other violations found by the district court in *Milhollin* and *Eaton* were not discussed.[2]

The Supreme Court granted certiorari to determine whether the TILA requires that the existence of an acceleration clause always be disclosed on the face of the credit agreement. 442 U.S. 940 (1979). On review, the Supreme Court noted that Congress delegated expansive authority to the Federal Reserve Board to elaborate and expand the legal framework of the Act. *FMCC v. Milhollin, et al*, 444 U.S. 555, 559–60, 100 S.Ct. 790, 794, 63 L.Ed.2d 22 (1980). The Supreme Court found that the issue of acceleration clause disclosure was not governed by clear expression in the statute or in the regulations and therefore it was appropriate to defer to the Board's interpretations. The Board has consistently construed the statute and regulations to impose no requirement that an acceleration clause always be disclosed. Disclosure is required only when the acceleration rebate practices diverge from other prepayment rebate practices. 444 U.S. at 569, 100 S.Ct. at 798. The Court held that unless demon-

strably irrational, Board staff opinions construing the Act or Regulation should be dispositive. 444 U.S. at 565, 100 S.Ct. at 797. Accordingly, the Supreme Court rejected the Ninth Circuit's holding that separate disclosure of acceleration rebate practices is always required. The Supreme Court noted but did not decide plaintiff's alternative argument that FMCC violated the Act and Regulation Z because the acceleration clause in the contract allegedly contradicted the disclosures on the face of the contract. 444 U.S. at 570, n. 14, 100 S.Ct. at 799, n. 14. Plaintiffs apparently raised that argument for the first time before the Supreme Court. That Court determined only that "if properly presented, the contradiction issue is open for decision on remand." *Id.*

The Supreme Court remanded *Milhollin* and *Eaton* to the Court of Appeals. In turn, the Court of Appeals remanded to this court for "all further proceedings pursuant to the opinion of the United States Supreme Court rendered February 20, 1980." 618 F.2d 623 (9th Cir. 1980).

## ISSUES ON REMAND

The parties do not agree on what issues remain on remand. It is clear that those issues raised but not decided by the district court in *Messinger* and *Andresen* must now be addressed. For the most part, however, these issues are resolved by the Supreme Court's decision in *Milhollin* and by recent opinions of this court. *E.g., Jenkins v. Francis Ford*, Civ. No. 78–192 (D.Or.1981); *Neelands v. Sandy Blvd Dodge*, Civ. No. 79–169 (D.Or.1980).

The plaintiffs argue that the Supreme Court remanded *Milhollin* and *Eaton* for consideration only of the acceleration issue, and that the Ninth Circuit accordingly remanded only that issue to this court. The defendant disagrees. FMCC argues that the Supreme Court's language allows the issue to be resolved on remand only if it had been properly presented to the trial court before appeal. FMCC asserts the elementa-

2. See fn. 1, *supra.*

ry principle that new issues may not be raised for the first time on appeal.

Plaintiff's argument has the effect of placing those issues that were presented but not decided by the Court of Appeals back before that Court for resolution. Those issues include violations found in *Milhollin* and *Eaton* by the district court but not addressed by the Court of Appeals. Defendant, on the other hand, seeks to re-argue all bases for the judgment entered in *Milhollin* and *Eaton* by this court.

■ I hold that the remands in question do not permit plaintiffs to argue in this court an issue raised for the first time before the United States Supreme Court. In all four cases, plaintiffs alleged that FMCC violated the Act by not disclosing the acceleration clause on the face of the contract. That argument was accepted by this court and the Court of Appeals but rejected by the Supreme Court. The Supreme Court did not consider plaintiffs argument raised for the first time that the language of the acceleration clause contradicted disclosures made on the face of the contract.[3]

■ The Supreme Court's rejection of plaintiff's argument that the acceleration clause must be included in the necessary disclosures is the law of these cases. Similarly, the Court of Appeals' holding that FMCC adequately identified itself as a creditor on the face of the contract is the law of these cases and cannot be reexamined by this Court. *E.g., Corex Corp. v. United States*, 638 F.2d 119, 122 (9th Cir. 1981); *Firth v. United States*, 554 F.2d 990, 993–94 (9th Cir. 1977).

I may review, however, this court's rulings on issues in *Milhollin* and *Eaton* not decided by the Court of Appeals or the Supreme Court. This district court found, in addition to those violations reviewed by the appellate courts, that FMCC failed to adequately describe its security interest. Specifically, this court found that use of the phrases "security interest under the Uniform Commercial Code" and "all other amounts due or to become due hereunder" were inadequate descriptions of the security interest. I interpret the Court of Appeals' remand order to allow reexamination of this issue.

■ The Supreme Court's decision in *Milhollin* makes clear that lower courts are not free to ignore administrative interpretations of relevant regulations. Because staff interpretations issued subsequent to this court's decision in *Milhollin* and *Eaton* are determinative, I am compelled to reexamine these decisions in light of those interpretations and subsequent case authority. *E.g., Robinson v. Heilman*, 563 F.2d 1304, 1307 (9th Cir. 1977) (federal courts must take into account new and supervening rules of decisions as long as an action is *sub judice*).

Issues remaining for my consideration, therefore, are:

(1) Whether FMCC violated the Act by inadequately describing its security interest in *Milhollin, Eaton, & Andresen* ;

(2) Whether FMCC violated the Act in its dealings with Andresen by:

(a) disclosing a $150 payment as both a "pickup" payment and a "balloon" payment; or

(b) using two separate papers to disclose information; or

(c) allegedly misstating the amount of the down payment.

All other issues are either resolved by the appellate decisions or have been dropped during the course of the long proceedings.[4]

## DISCUSSION

■ The Truth-in-Lending Act is intended to promote "the informed use of credit" by asserting "meaningful disclosure

---

**3.** The Supreme Court did acknowledge that such a contradiction, if present, could run afoul of 12 C.F.R. §§ 226.8(b)(7) or 226.6(c) as interpreted by the Board's staff. *See* Fed. Reserve Staff Public Information Letter No. 1324. *Milhollin, supra,* 444 U.S. at 570, n. 14, 100 S.Ct. at 799, n. 14.

**4.** *Messinger* concedes that unless I review the issue of whether the acceleration clause conflicted with the default provisions, no issues remain which would not be decided adversely to plaintiff in light of subsequent decisions.

of credit terms" to consumers. 15 U.S.C. § 1601; *Milhollin*, 444 U.S. at 569, 100 S.Ct. at 798. The provisions of the Act and implementing regulations, as remedial legislation, are to be broadly construed in favor of the consumer to implement this Congressional intent. *E.g., Riggs v. Government Emp. Financial Corp.*, 623 F.2d 68, 71 (9th Cir. 1980). "Meaningful disclosure" does not mean, however, more disclosure. The goal must be carefully balanced against the possibility of informational overload. *FMCC v. Cenance*, 452 U.S. 155, 101 S.Ct. 2239, 2241, 68 L.Ed.2d 744 (1981), *citing FMCC v. Milhollin*, 100 S.Ct. at 798. I read the Act's requirements in light of its general purpose—to produce meaningful information to aid credit consumers. *Hutchings v. Beneficial Finance Co. of Oregon*, 646 F.2d 389, 392 (9th Cir. 1981).

1. *Disclosure of Security Interest.*

█ Regulation Z, 12 C.F.R. 226.8(b)(5) requires that a creditor disclose a "description or identification of the type of security interest held or to be retained or acquired by the creditor . . . ." Plaintiffs challenge the disclosure made in these cases. That disclosure read:

> "Seller shall have a security interest under the Uniform Commercial Code in the Property (described above) and in the proceeds thereof to secure the payment in cash of the Total of Payments and all other amounts due or to become due hereunder."

At issue here is the use of the clauses "security interest under the Uniform Commercial Code" and "all other amounts due or to become due hereunder."

This court in *Milhollin, supra,* determined that these clauses failed to adequately describe the security interest held by the creditor. *See also Onadeko v. Rainier Credit Co.*, Civ. No. 79–845 (D.Or.1980), *app. pending; Smeeton v. Ford Motor Credit Co.*, Civ. No. 78–691 (D.Or.1980) and *Meadow v. Ford Motor Credit Co.*, Civ. No. 78–1013 (D.Or. 1980). In *Neelands v. Sandy Blvd Dodge*, Civ. No. 79–169 (D.Or.1980), this court reexamined its conclusion that use of the clause

"security interest under the Uniform Commercial Code" violated the Act. Judge Juba found that in light of the Supreme Court's directive that Federal Reserve Board interpretations are to be given great deference, *Milhollin* should be reexamined in view of a subsequent Official Staff Interpretation, FC–0023. That Interpretation states that disclosure of a "security interest under the Uniform Commercial Code" is a sufficient description for purposes of section 226.8(b)(5). Accordingly, Judge Juba found that use of the clause did not violate the Act.

Similarly, Judge Leavy in *Jenkins v. Francis Ford*, Civ. No. 78–192 (D.Or.1981), reconsidered whether use of the clause "all amounts due or to become due hereunder" violated the Act. He considered an Official Staff Interpretation, FC–0136, that was not discussed in *Milhollin, Onadeko, Smeeton* or *Meadow, supra.* Judge Leavy determined that the Staff Interpretation supported a finding that use of the clause did not violate the Act.

For the reasons stated by this Court in *Neelands* and *Jenkins, supra,* I hold that the clauses "security interest under the Uniform Commercial Code" and "all amounts due or to become due hereunder" sufficiently disclose the security interest and therefore do not violate the Act.

2. *Andresen*

Andresen alleged that defendant violated the Truth-in-Lending Act and Regulation Z by failing to make requisite disclosures clearly, conspicuously, and in a meaningful sequence. Regulation Z, 12 C.F.R. § 226.-6(a) imposes a general requirement that all disclosures must be made "clearly, conspicuously, (and) in a meaningful sequence." Section 226.6(c) provides that additional disclosures must not be placed so as to mislead or confuse the consumer. Andresen argues that defendants violated these regulations in two respects. First, defendant wrongly disclosed a $150 payment as both a "pickup" payment and a "balloon" payment. Second, defendant wrongly used two separate papers to disclose the credit information. An-

dresen asserts that the latter practice also violates section 226.8(a) which provides, *inter alia*, that disclosures are to be made together on the same side of the same piece of paper.

Andresen further contends that defendants violated the Act by misstating the amount of the downpayment.

### a. *Pickup and Balloon Payments.*

On October 5, 1976 Andresen purchased from defendant Webster-Wolford Ford, Inc. an automobile on a deferred payment basis. He paid, however, only a portion of the designated down payment. The remainder was due the following day and was disclosed on the face of the contract by interlineation as a "pick-up payment" of $150. This amount was also designated as a "balloon payment" due October 6, 1976. There is no dispute that only one $150 payment was due on October 6, 1976. The issue presented is whether disclosure of the payment as a pick-up payment and as a balloon payment violates the Act.

Regulation Z requires that a creditor disclose the amount of the down payment and the component "cash downpayment" and "trade-in" amounts. 12 C.F.R. § 226.-8(c)(2). The Regulation does not designate further components. An official interpretation of Regulation Z does discuss whether a pick-up payment should be treated as a part of the "amount financed" or as a deferred portion of the downpayment.[5] The interpretation does not, however, clearly state that a pick-up payment treated as downpayment must be separately itemized. *See Gilbert v. Wood Acceptance Co.*, 486 F.2d 627, 630–31 (7th Cir. 1973).

In *Gilbert v. Wood Acceptance, supra,* a contract between the parties stated that the buyer paid a "cash downpayment" of $350. In fact he paid only $100 and was obligated to pay the balance in four weekly installments. The Court determined that treat-

ment of pickup payments as deferred but unspecified portions of the cash downpayment violated the act by failing to "assure a meaningful disclosure of credit terms." 486 F.2d at 632. The Court opined that such a deferred payment should be disclosed separately, by interlineation if necessary, as a part of the downpayment. *Id.*

Here, the defendants did include by interlineation the pickup payment as an itemized amount of the downpayment. In *Glover v. Doe Valley Development Corp.*, 408 F.Supp. 699 (W.D.Ky.1975), such practice was questioned. An important additional factor in that case was, however, that the contract specified a cash downpayment received of $600, $200 due immediately and a pickup payment of $400 due later. The Court concluded that confusion existed as to whether the total downpayment was $1200 or $600. 408 F.Supp. at 704. Here, the designated cash payment did not include the pickup payment.

■ I hold that the intent of the Act requires that deferred downpayments be disclosed.[6] *Gilbert, supra; Martinez v. Piemonte Ford, Inc.,* slip op. No. 80 C 4597 (N.D.Ill. October 27, 1980). Here, the pickup payment was disclosed properly as a part of the total downpayment.

■ Andresen argues that inclusion of the payment both as a part of the downpayment and as a balloon payment is unclear, confusing, and misleading and violates sections 226.6(a) and (c). While I hold that the additional disclosure of the payment as a balloon payment was not necessary, I do not conclude that it violated the Act.

In some instances, a pickup payment may properly be identified as a "balloon payment." 12 C.F.R. § 226.504. Here, such disclosure was unnecessary since the amount of the downpayment was less than twice the amount of the regularly scheduled

---

**5.** Treatment of Pick-up Payment in an Installment Contract, issued September 11, 1969, reprinted in 12 C.F.R. § 226.504.

**6.** *See also* letter written by Assistant Director of the Board of Governors, October 28, 1969,

stating that "pickup payment" may be shown in the disclosure statement as a deferred portion of the cash down payment" under the provisions of § 226.8(c)(2). The letter is excerpted in part in *Gilbert*, 486 F.2d at 631, n. 3.

payments. Defendants admit that the payment was "zealously" disclosed as both a balloon and a pickup. Nevertheless, defendants contend that no confusion resulted and therefore no violation occurred.

The Act imposes a standard of "meaningful disclosure." 15 U.S.C. § 1601. The remedial nature of the Act often requires strict compliance. *Woods v. Beneficial Financial Co. of Eugene*, 395 F.Supp. 9, 12 (D.Or.1975). In determining whether a particular disclosure is unclear or confusing, however, I must be guided by probabilities rather than mere possibilities. *Williams v. Western Pacific Financial Corp.*, 643 F.2d 331, 339 (5th Cir. 1981). Actual deception is not a prerequisite to a finding of violation. *E.g., Charles v. Krauss Co., Ltd.*, 572 F.2d 544, 546 (5th Cir. 1978). I will liberally construe the provisions of the Act and regulations in favor of borrowers who were misled or might have been misled by the disclosures. *Martinez v. Idaho First National Bank*, 509 F.Supp. 773, 781 (D.Idaho 1981).

Here, although there existed the possibility of confusion, I find no violation occurred by listing the $150 payment as a balloon and as a pickup. While such multiple disclosures might confuse a lawyer, the issue is whether it would confuse or mislead the borrower. *Williams, supra* at 339. I am persuaded that a borrower under the circumstances would believe that only one $150 payment was due the following day. Accordingly, I find no violation.

b. *Same-Side Disclosure.*

Regulation Z, 12 C.F.R. § 226.8(a), mandates certain disclosures be made together on either:

(1) The note or other instrument evidencing the obligation on the same side of the page and above the place for the customer's signature, or

(2) One side of a separate statement which identifies the transaction.

Various exceptions to the rule are not applicable here. *See* 12 C.F.R. § 226.801; Opinion Letter 825, CCH Consumer Credit Guide ¶ 31,147; Opinion Letter 1016, 5 CCH Consumer Credit Guide ¶ 31,356; Opinion Letter 1154, 5 CCH Consumer Credit Guide ¶ 31,536.

The purpose of single-sided disclosure is to further the Act's goal of meaningful disclosure. Such a goal cannot be met if the borrower must examine several documents to learn the terms of the loan agreement. *E.g., Ljepava v. M.L.S.C. Properties, Inc.*, 511 F.2d 935, 942 (9th Cir. 1975). In the absence of a statutory defense, even a technical violation of section 226.8(a) results in liability. *E.g., Smith v. Chapman*, 614 F.2d 968, 973 (5th Cir. 1980); *Charles v. Krauss Co., Ltd.*, 572 F.2d 544 (5th Cir. 1978) (dictum); *Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437, 442 n.14 (3d Cir. 1977), *disapproved on other grounds, Anderson Bros Ford v. Valencia*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981).

Here, plaintiff argues that defendants' disclosures on two separate pieces of paper constitutes a violation. Defendant Webster-Wolford Ford at the time of sale prepared and stapled to the contract an additional page entitled "Additional Disclosures." The additional disclosures included statements concerning: (1) reassignment to FMCC; (2) prepayment penalties; (3) acceleration provisions; and (4) acknowledgment of other provisions. The prepayment penalties section repeated information disclosed on the face of the contract.

Defendants argue that use of an additional page is not a violation since all required disclosures were made on the face of the contract as required by section 226.8(a). A comparison of the items required for disclosure by section 226.8(c) and the contract in question reveals that defendants are correct. Accordingly, I hold that all required disclosures were made on one side of the contract.

Plaintiff further argues, however, that use of the additional page violates sections 226.6(a) and (c). Those sections mandate that all disclosures be made "clearly, conspicuously, in meaningful sequence," and so as to not "mislead and confuse" the consumer.

Plaintiff does not explain how the attachment of an additional disclosure sheet is confusing or misleading or is not presented clearly, conspicuously, and in a meaningful sequence. The mere use of an additional page to disclose additional information or explanations cannot be a violation. Indeed, the regulations clearly allow such a practice. 12 C.F.R. § 226.6(c). The repetitious prepayment penalties are at most undesirable given the Congress' aversion to "informational overload." *Milhollin*, 444 U.S. at 568, 100 S.Ct. at 798.

Defendants did not violate the Act by attaching a separate sheet containing additional disclosures and explanations.

c. *Misstatement of Downpayment.*

■ Misstatement of an amount required to be disclosed may result in liability. *E.g., Harris v. Tower Loan of Mississippi*, 609 F.2d 120 (5th Cir.), *cert. denied*, 449 U.S. 826, 101 S.Ct. 89, 66 L.Ed.2d 30 (1980) (understatement of finance charge); *Mirabel v. General Motors Acceptance Corp.*, 537 F.2d 871 (7th Cir. 1976), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 699 (1978) (understatement of the annual percentage rate); *Childs v. FCCC*, 470 F.Supp. 708 (N.D.Ala.1979) (overstatement of cash price) (dictum); and *Woods v. Beneficial Finance Co. of Eugene, supra* (understatement of financial charge). *See also Hutchings v. Beneficial Financial Co. of Oregon*, 646 F.2d 389 (9th Cir. 1981) (creditor escaped liability for a ten cent error in the deferred payment price by showing that it maintained "procedures reasonably adapted to avoid such error").

Here, Andresen's contract specified a total downpayment of $613. This total was calculated by adding together a $500 cash downpayment, $150 pickup payment, and a negative $37 trade-in. The negative trade-in resulted when the agreed trade-in allowance was exceeded by the amount Andresen owed on the vehicle. Defendant Webster-Wolford Ford accepted a $500 trade-in al-

lowance. Andresen estimated that he owed $537. Webster-Wolford accepted this figure and used it to calculate the total downpayment. In fact, Andresen owed $556.65. That amount was paid by Webster-Wolford who later demanded that Andresen pay the $19.65 difference between his estimate and the amount he actually owed. Andresen refused to pay and at some point the demand was dropped.[7]

At trial, it was disclosed that when it was not possible to immediately determine the amount owing on a trade-in, defendant Webster-Wolford Ford accepted the customer's estimate for purposes of writing up the agreement. It was further disclosed that, as a normal practice, when the actual amount owing was determined, the customer was notified by either a refund check or a demand for payment. Webster-Wolford reportedly informed each customer of this procedure prior to signing the agreement.

Andresen argues that defendants violated the Act by estimating the downpayment. Regulation Z, 12 C.F.R. § 226.8(c)(2), requires the lender to disclose the total downpayment and to itemize component amounts. Regulation Z, 12 C.F.R. § 226.6(f), also specifically provides that if an amount required to be disclosed is not known or available, the amount may be estimated.

■ Section 226.6(f) does not excuse a failure to disclose required information. *Pedro v. Pacific Plan of California*, 393 F.Supp. 315, 320–21 (N.D.Cal.1975). The restrictive nature of the section indicates that estimated figures are to be used only when absolutely necessary. *Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d 407, 417–18 (7th Cir. 1980).

■ The regulations clearly contemplate the use of estimated information. The estimate came from the buyer and the buyer knew that it was an estimate. Andresen was adequately informed of the nature of the estimate and, therefore, no violation occurred.

**7.** Defendants argue that no misstatement issue exists since plaintiff never paid the additional $19.65. I reject that argument. I will not base

defendants' innocence on plaintiff's failure to act.

## CONCLUSION

On remand, I hold that defendants have not violated the Truth-in-Lending Act. Accordingly, the Clerk is directed to vacate all prior judgments and to enter judgment in favor of all defendants. Each side is to bear its own costs.

This opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

IT IS SO ORDERED.