Roselda E. NESBITT, individually and on behalf of all others similarly situated, Plaintiff,

v.

BLAZER FINANCIAL SERVICES, INC., Defendant.

Willie Mae MILLS, individually and on behalf of all others similarly situated, Plaintiff,

v.

BLAZER FINANCIAL SERVICES, INC., Defendant.

Nos. 79 C 134, 78 C 4277.

United States District Court, N.D. Illinois, E.D.

Aug. 9, 1982.

Roberta Strickler, Carolyn Cozad Hughes, Timothy T. Hughes, Gary S. Laser (IIT/Chicago-Kent Law School, Legal Services Center), Chicago, Ill., for plaintiffs.

Mary Alice Noone, Lawrence X. Pusateri (Peterson, Ross, Shloerb & Seidel), Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

These consolidated lawsuits have been brought as class actions to recover damages for alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and Regulation Z, 12 C.F.R. § 226.1 *et seq.*, issued pursuant to TILA. Plaintiffs, Roselda E. Nesbitt ("Nesbitt") and Willie Mae Mills ("Mills"), representing certified classes composed of consumers who entered into loan transactions with defendant Blazer Financial Services, Inc. ("Blazer"), and who received disclosure statements similar to those received by Nesbitt or Mills, claim that Blazer violated federal law in six respects:

(1) It failed to make required disclosures clearly, conspicuously, and in meaningful sequence.

(2) Its notes and disclosure statements contain terms and information which are confusing, misleading and contradictory.

(3) It failed to comply with regulations governing disclosure of insurance costs.

(4) It did not disclose, in the Nesbitt transaction, that the note contains a provision for confession of judgment, which constitutes a security interest in property, and it failed to describe the property taken as security.

(5) In the Mills transaction it failed to disclose that after-acquired property was subject to a security interest and to adequately describe the security interest in that it did not state that a confession of judgment clause permits entry of a judgment without prior notice or hearing.

(6) It failed to make reference, in the Nesbitt disclosure statement, to a separate document itemizing the personal property subject to a security interest, and did not disclose that after-acquired property was also subject to a security interest.

The parties, agreeing that there are no genuine issues of material fact,[1] filed cross motions for summary judgment on the issue of liability as to each of these claims. The matter was referred to Magistrate Olga Jurco for findings and recommendations. On May 5, 1981, Magistrate Jurco issued a report recommending that Blazer be granted summary judgment on plaintiffs' first through third claims and that plaintiffs be granted summary judgment on their fourth

1. As discussed below, plaintiffs do contend that there is a disputed issue of fact with respect to a portion of their second claim. They thus do not seek summary judgment with respect to that portion of the claim and argue that Blazer's motion as to that claim should be denied.

through sixth claims. Blazer has filed objections to the latter recommendation and those objections have been fully briefed. Upon review of the facts of these cases, the arguments of the parties, and the relevant case authority, this court agrees with Magistrate Jurco's recommendations with respect to claims one through five, but concludes that Blazer is entitled to summary judgment with respect to claim six.

## I.

### MAGISTRATE'S RECOMMENDATIONS TO WHICH THERE ARE NO OBJECTIONS

Magistrate Jurco recommended that Blazer's motion for summary judgment be granted with respect to claims one through three set forth above. In light of the Magistrate's lucid and thorough report on these claims and in the absence of any objections thereto, this court adopts her recommendations with the following brief discussion.

### A. Plaintiffs' First Claim

Regulation Z, 12 C.R.F. § 226.6(a), imposes on creditors the duty to make the disclosures required by TILA and regulations thereunder "clearly, conspicuously, [and] in meaningful sequence...." In *Allen v. Beneficial Finance Company of Gary,* 531 F.2d 797 (7th Cir.), *cert. denied,* 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976), the Seventh Circuit Court of Appeals defined "meaningful sequence" as follows:

> [M]eaningful sequence first requires groupings of logically related terms. Second, meaningful sequence requires that terms in the groupings be arranged

in a logically sequential order emphasizing the most important terms.

531 F.2d at 801.

■ Plaintiffs contend that TILA and Regulation Z require Blazer to group two sets of logically-related items: (1) the number, amount and dates of payments, and (2) the amount financed, the finance charge and the annual percentage rate.[2] But the law does not mandate such rigidity. While the burden is on the creditor "to be able to support his belief that his disclosures meet the requirements of the Regulation," he can do so in a "multitude of ways." *Public Position Letter No. 545* (November 4, 1971), CCH Consumer Credit Guide ¶ 30,759.[3]

■ Read horizontally, the first line of Blazer's disclosure statement informs the consumer of the number and amount of payments. The sum of these individual payments is the total amount paid by the consumer, which is the next disclosure in the line. Following that, Blazer lists the portion of the total payment constituting interest.

On the second line—again reading horizontally—the statement presents the total amount financed, itemized charges and the "net to customer(s)," which is the "amount of credit of which the obligor will have the actual use." 15 U.S.C. § 1639(a)(1). This latter figure is reached by subtracting the itemized charges from the amount financed.

On the third line Blazer lists—again in horizontal order—the term of the loan, the due date of each payment and the maturity date of the loan. Finally, Blazer highlights the finance charge and annual percentage rate, two essential terms of the loan, by isolating them in boldface type on the far right side of the disclosure statement.

---

**2.** Although plaintiffs state that "the consumer, if he or she sees a relationship at all, must read [the disclosure statement] across, up and down, and, indeed, all around" (Pl.Mem. at p. 9) in order to understand the terms of credit, this court does not read their complaint to claim that a vertical format is required. In any event, the Seventh Circuit has held that such presentation is not essential. *Basham v. Finance America Corp.,* 583 F.2d 918, 926 (7th Cir.1978).

**3.** As Magistrate Jurco noted, Federal Reserve Board regulations, opinions, and interpretations, while not binding upon the court, are entitled to great deference. *Ford Motor Credit v. Milhollin,* 444 U.S. 555, 565–69, 100 S.Ct. 790, 796–797, 798, 63 L.Ed.2d 22 (1980); *Basham v. Finance America Corp.,* 583 F.2d at 925.

■ While Blazer's disclosure format may not comport with plaintiffs' preferred logic, this court believes that its sequential presentation of facts relating to the money involved in the loan, followed by facts about the dates of the loan, is logical and permits easy arithmetical computation. *See Johnson v. Blazer Financial Services, Inc.,* No. 75–178–MAC, slip op. at p. 6 (M.D.Ga. April 19, 1976) (upholding identical disclosure statement). In its disclosure statement Blazer has presented the required disclosures in a reasonably if not optimally comprehensible fashion, and that is all that is required. *Warren v. Credithrift of America, Inc.,* 599 F.2d 829, 832 (7th Cir.1979).

### B. *Plaintiffs' Second Claim*

■ Plaintiffs' second claim concerns the acceleration, delinquency and prepayment provisions of the notes and disclosure statements in question. This claim has two components[4] and Blazer is entitled to summary judgment on each of them.

#### 1. *Failure to Disclose Default Charges in the Context of Acceleration*

■ Plaintiffs allege in their complaints that Blazer violated Regulation Z, 12 C.F.R. § 226.8(b)(4) by failing to disclose as a default charge its contractual right to accelerate the balance of the loan on default. In *Ford Motor Credit v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), the Supreme Court, relying heavily on the official interpretations and positions of the Federal Reserve Board, held that an acceleration clause is a default charge for disclo-

sure purposes only when the debtor does not receive a rebate of unearned finance charges and that disclosure is required only where the policy of the creditor relating to rebate upon acceleration differs from the creditor's rebate policy in the case of voluntary prepayment of the debt.

The Mills and Nesbitt disclosure statements provide that the debtors "shall be entitled to a rebate of" the unearned portion of the finance charge upon prepayment of the unpaid balance of the loan. The notes contain clauses which provide that "[a] default in the making of any payment . . . shall, at the option of the Creditor . . . render the unpaid balance due and payable less any refunds or credits then due . . . ." The disclosure statements contain no reference to Blazer's rebate policy in the event of acceleration.

Plaintiffs contend that summary judgment may not be granted on this claim because there is a disputed question of fact as to Blazer's rebate policy upon acceleration—the factor that triggers disclosure requirements under *Milhollin.* In its answer to Plaintiffs' Interrogatory No. 21, however, Blazer stated that its policy on acceleration of a debt was to rebate the unearned portion of the finance charge in the same manner as rebate upon prepayment. Since Blazer's rebate policy was the same with respect to acceleration and prepayment, *Milhollin* requires no more disclosure than was made. Blazer is therefore entitled to summary judgment on this claim. *See also* Official Staff Interp. No. FC–0054, 12 C.F.R. Part 226 Appendix (1977).

4. Plaintiffs also alleged, but did not brief, a third component of this claim: that Blazer failed to disclose the method of computing default charges in the event of delinquency in payments. This claim has no merit. Both the Mills and Nesbitt disclosure statements provide, in the event of delinquency, for a rebate of charges that would be required for prepayment of the loan. The prepayment provisions provide for computation of the rebate according to the "Sum of the Digits Rule." According to *Federal Reserve Board Staff Interpretation* (April 30, 1973), 12 C.F.R. § 226.818(c), this information is sufficient:

Many State statutes provide for rebates of unearned finance charges under methods known as the "Rule of 78's," or "sum of digits" or other methods. In view of the fact that such statutory provisions involve complex mathematical descriptions which generally cannot be condensed into simple accurate statements, and which if repeated at length on disclosure forms could detract from other important disclosures, the requirement of rebate "identification" is satisfied simply by reference by name to the "Rule of 78's" or other method, as applicable.

2. *Contradictions between Information on Notes and Disclosure Statements*

■ Regulation Z, 12 C.F.R. § 226.6(c) permits a creditor to provide additional, but not required, information on its disclosure statements as long as such information does not mislead or confuse the debtor or contradict information that is required to be disclosed. Plaintiffs contend that Blazer has violated this provision because the acceleration clause of its notes, which provides for acceleration of the unpaid balance of the debt "less any refunds or credits then due," when read in the context of the delinquency provision of its disclosure statements, which provides for "the rebate of charges which would be required for prepayment in full," leads the debtor to conclude incorrectly that there will be no rebate of finance charges upon acceleration. According to plaintiffs this conclusion, necessarily drawn from the delinquency and acceleration provisions, improperly conflicts with the presumption, under *Milhollin,* that the creditors' prepayment and acceleration rebate policies are identical unless otherwise stated. In support of their argument, plaintiffs rely on footnote 14 of the *Milhollin* decision, 444 U.S. at 570, 100 S.Ct. at 799, which states that alleged conflicts between language regarding acceleration rebates on the credit contract and provisions of the disclosure statement, "if present, could run afoul of 12 C.F.R. §§ 226.8(b)(7) or 226.6(c). . . ." [5]

The claimed contradictions require an exceedingly strained and illogical reading of the statements in question. The delinquency provisions describe, as required by Regulation Z, the charges payable upon two or more instances of delinquent payments. The acceleration clauses merely give Blazer the right to demand immediate payment of the unpaid balance of the loan in the event of the debtor's default in the making of a payment. Under the *Milhollin* decision, the former constitute charges on the debtor and the latter, rights of the creditor. The alleged conflict with the presumption of iden-

tical acceleration and prepayment rebate policies requires that the two sets of provisions be read in conjunction with each other. However, since these provisions are independent of each other and deal with completely different questions, such a reading does not make sense. Defendant is therefore entitled to summary judgment on this claim.

### C. *Plaintiffs' Third Claim*

■ Both Nesbitt and Mills signed a section of the disclosure statements in question, indicating that they desired credit life and disability insurance. Plaintiffs' claims regarding disclosure of these insurance costs are governed by Regulation Z, 12 C.F.R. § 226.4, which provides:

(a) *General Rule* . . . the amount of finance charge in connection with any transaction shall be determined as the sum of all charges . . . including:

\* \* \* \* \* \*

(5) Charges or premiums for credit life, accident, health, or loss of income insurance written in connection with any credit transaction unless,

(i) The insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and

(ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.

The disclosure statements in both the Mills and Nesbitt transactions contain an "Insurance Notice" in boldface type, that states, "Credit Life and Disability Insurance is not required to obtain this loan." Requirement (i) of § 226.4(a)(5) is thus satisfied and the only question is whether the cost of such insurance was adequately disclosed to plaintiffs.

At the top of the Mills and Nesbitt disclosure statements, in the aforementioned hor-

---

**5.** The Court did not decide the question of these alleged contradictions but left the issue open for decision on remand. On remand, the district court refused to hear this issue on the ground that it was raised improperly for the first time on appeal to the Supreme Court. *Milhollin v. Ford Motor Credit Co.,* 531 F.Supp. 379, 383 (D.Or.1981).

izontally-arranged boxes, are two boxes captioned, in Mills' case, "Life Insurance Premium" and "A & H Insurance Premium," and, in Nesbitt's case, "Life Insurance" and "Dis. Ins. Ben." Each box is filled in with a dollar amount. Below the notice that insurance is not required is the statement, "I desire Credit Life and Disability Insurance at the cost of," followed by the same amounts contained in the similarly-labeled boxes above the Insurance Notice. This statement on each disclosure form is followed by handwritten dates and the signature of the plaintiff involved.

Plaintiffs contend that the disclosure of insurance costs is inadequate because the amounts set forth below the Insurance Notice do not specify the type of insurance to which they relate. This court believes that, according to normal grammatical construction, the order in which the insurance amounts are listed must follow the order in which the types of insurance are listed in the statement. Thus, the first figure corresponds to life insurance and the second to disability insurance. Moreover, any conceivable ambiguity in the statement is cleared up by the immediately preceding boxes indicating the cost of each type of insurance. Defendants are entitled to summary judgment on this claim.

## II.

### MAGISTRATE'S RECOMMENDATIONS TO WHICH DEFENDANT OBJECTS

The remaining claims of plaintiffs involve the disclosure requirements of TILA and Regulation Z with respect to property in which the creditor holds a security interest as a condition of the loan. Blazer objects to Magistrate Jurco's recommendation that plaintiffs be granted summary judgment with respect to each of these claims.

A. *Nesbitt's Claim that Blazer Failed to Disclose a Confession of Judgment Clause as a Security Interest and to Describe the Property Subject to the Security Interest*

The note which Nesbitt signed contained the following provision:

*To secure the payment of this note,* the undersigned ... irrevocably authorize any attorney of any court of record to appear for any one of the undersigned in such court ... after default in the payment of this Note and confess judgment against any one of the undersigned ... in favor of the holder of this Note and to release all errors which may intervene in any such proceeding and to consent to the immediate execution of such judgment, hereby ratifying every act of such attorney hereunder (emphasis supplied).

Nesbitt contends that this confession of judgment provision or cognovit clause constitutes a security interest in property which Blazer improperly failed to reveal in its disclosure statement and further, that Blazer failed to adequately describe the property subject to said security interest.

A preliminary question raised by Blazer is whether the former claim, that a cognovit clause is a security interest subject to disclosure, was properly pled in Nesbitt's complaint. The allegations of her complaint relating to security interest disclosure state:

Blazer has violated the Act and Regulation Z in the extension of credit to each member of the plaintiff class because the disclosure statement:

\* \* \* \* \* \*

d. fails to clearly identify the property to which the security interest relates as required by 15 U.S.C. § 1631(a) and § 1639(a)(8) and 12 C.F.R. § 226.6(a) and § 226.8(b)(5); [and]

e. fails to clearly disclose that Blazer retains a security interest in after-acquired property as required by 15 U.S.C. § 1631(a) and 12 C.F.R. § 226.6(a) and § 226.8(b)(5) ....

Although Nesbitt thus does not plead specifically that the confession of judgment clause is a security interest subject to disclosure, under the liberal pleadings standards of the Federal Rules of Civil Procedure, her allegations are broad enough to .

encompass such a claim and sufficient to inform Blazer of her claim. Section 226.-8(b)(5) requires a "description or identification of the type of any security interest held ... and a clear identification of the property to which the security interest relates ...." The latter requirement cannot logically come into play in the absence of the former. Nesbitt's allegation of failure to describe property subject to the security interest thus puts Blazer on notice that she is claiming the existence of a security interest.

Turning to the merits of Nesbitt's claim, this court concludes that a confession of judgment or cognovit clause is a security interest subject to the disclosure requirements of TILA and Regulation Z, and that Blazer failed to satisfy these requirements in its disclosure statements. The court notes, first, that Blazer itself in the note described the cognovit clause as a provision "[t]o secure the payment of this note." For Blazer to provide in its note that the confession of judgment provision secures the debtor's obligation, and then to later claim that it is not a security interest, "is hardly the type of disclosure Congress thought would 'permit consumers to compare the cost of credit among different creditors and to shop effectively for the best credit buy.'" *Ives v. W.T. Grant Company,* 522 F.2d 749, 761 (2d Cir.1975) (citation and footnote omitted) (quoted in *Bulger v. Thorp Credit Inc. of Illinois,* 609 F.2d 1255, 1258 (7th Cir.1979)).

Secondly, the definition of "security interest" promulgated by the Federal Reserve Board for purposes of disclosure requirements encompasses cognovit clauses:

> "Security interest" and "security" mean any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under the Uniform Commercial Code, real property mortgages, deeds of trust, and *other consensual or confessed liens whether or not recorded*
>
> ....

12 C.F.R. § 226.2(gg) (emphasis supplied). The Federal Reserve Board, in its official interpretation of § 226.2(gg) has even more explicitly included provisions for confession of judgment, such as the one in the Nesbitt note, in the definition of "security interest":

> In some of the States, confessions of judgment clauses or cognovit provisions are lawful and make it possible for the holder of an obligation containing such clause or provision to record a lien on property of the obligor simply by recordation entry of judgment; the obligor is afforded no opportunity to enter a defense against such action prior to entry of the judgment.
>
> Since confession of judgment clauses and cognovit provisions in such States have the effect of depriving the obligor of the right to be notified of a pending action and to enter a defense in the judicial proceeding *before* judgment may be entered or recorded against him, such clauses or provisions in those States are security interests under § 226.2(gg) and for purposes of § 226.7(a)(7), § 226.8(b)(5) and § 226.9.

12 C.F.R. § 226.202 (emphasis in original).

The cognovit clause in question thus appears to fall clearly within the definition of a "security interest" required to be disclosed under 12 C.F.R. § 226.8(b)(5). Case law supports this conclusion. In *Engle v. Shapert Const. Co.,* 443 F.Supp. 1383 (E.D. Pa.1978), the court held that a similar confession of judgment clause permitting entry of judgment without notice or hearing constituted a security interest subject to the disclosure requirements of TILA and Regulation Z. The court went on to find that the defendant's disclosure statement, which failed to inform the borrower that he was not entitled to prior notice and a hearing, did not satisfy § 226.8(b)(5). In *Garza v. Chicago Health Clubs, Inc.,* 347 F.Supp. 955, 960 (N.D.Ill.1972) the court, in holding that the creditor had fulfilled its disclosure responsibilities with respect to a confession of judgment clause, assumed *sub silentio* that such clauses are security interests triggering the disclosure requirements of TILA and Regulation Z.

Blazer disputes the characterization of the cognovit clause in Nesbitt's note as a security interest, first, because any interest it may acquire in the debtor's property as a result of the operation of the clause is contingent upon the occurrence of uncertain events: (1) the borrower's default, which may never happen, and (2) Blazer's employment of the clause to obtain satisfaction of the debt, which it may never do. If these contingencies were sufficient to relieve the cognovit clause of its security interest quality, then virtually nothing could be characterized as a security interest. A creditor's contractual right to the debtor's property under a security agreement is always dependent upon his default and of course the creditor may always choose not to exercise such rights.

Blazer also contends that Illinois law governing confession of judgment clauses [6] takes them outside the definition of security interest. It argues that a confession of judgment clause does not constitute a security interest because (1) a judgment entered pursuant to such a clause may be reopened by the debtor under Illinois procedural law, Ill.Rev.Stat. ch. 110, § 72 and ch. 110A, § 276; (2) a confessed judgment does not constitute a lien until it is filed with the recorder of deeds in the case of real estate, Ill.Rev.Stat., ch. 77, § 1, or until a certified copy of the judgment is delivered to the sheriff in the case of personal property, Ill.Rev.Stat., ch. 77, § 9; and (3) citations to discover assets, executions, rules to show cause and warrants for arrests based on judgments entered by confession may not be issued unless such judgments are confirmed after service of process. General Order No. 6–4, Circuit Court of Cook County, Illinois. Blazer first raised the latter argument in its objections to the Report and Recommendations of Magistrate Olga Jurco, along with an alternative argument that the Fourteenth Amendment to the United States Constitution guarantees notice and a hearing before execution on a

judgment entered pursuant to a cognovit clause.

While "[s]tate law is not necessarily to be ignored in determining whether a creditor's interest is a security interest for TILA purposes," *Valencia v. Anderson Bros. Ford*, 617 F.2d 1278, 1285 (7th Cir. 1980), *rev'd on other grounds*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981), it is the "nature of substantive rights conferred on a creditor rather than ... state law characterizations of those rights" which determines whether or not the creditor acquires a security interest which is subject to disclosure. *Id.* Both federal and state law must therefore be examined—state law for the purpose of delineating the rights created and federal law for the purpose of deciding whether those rights constitute a security interest under TILA. As noted above, the regulations, opinions and interpretations of the Federal Reserve Board, the entity charged with the responsibility of implementing TILA, are entitled to great deference in deciding the federal law issues. *See* fn. 3, *supra*.

It is true, as Blazer contends, that Illinois law provides limited rights to a confession of judgment clause beneficiary such as Blazer. The simple entry of judgment against a debtor on the basis of a cognovit clause does not create a lien on his property. As with any other judgment creditor, Blazer must take some additional procedural steps in order to execute on the judgment entered by confession. A lien attaches to real estate only upon recordation of the judgment and to personal property only upon delivery to the sheriff of a certified copy of the judgment. The Illinois Civil Practice Act and Supreme Court Rules permit a confessed judgment to be opened by the defendant and, at least in Cook County, a judgment creditor may take no steps to execute on a confessed judgment until it

---

**6.** The Illinois statute authorizing confession of judgment clauses was amended, on September 4, 1979, to prohibit such clauses in consumer transactions. Ill.Rev.Stat. (1979), ch. 110, § 50(3). The parties agree, however, that this amendment does not affect the enforceability of such clauses in transactions entered into before that date.

has been confirmed after service of process.[7]

However, even a judgment so limited confers a security interest on the creditor under federal law. As noted above, the Federal Reserve Board has defined "security interest" to include unrecorded confessed liens, 12 C.F.R. § 226.2(gg), and has concluded that a cognovit clause is a security interest where, as here, state law permits entry or recordation of a judgment without prior notice and an opportunity to defend. 12 C.F.R. § 226.202. Blazer misses the thrust of the federal regulations and interpretations when it focuses on the acts required for the actual taking of the debtor's property or his post-judgment opportunities for a hearing. It is the relinquishment of the valuable right to notice and a hearing before entry of a judgment and the resulting shift from creditor to debtor of the burden of going forward that gives cognovit clauses their security interest quality. While state law may place limitations on the effect of such clauses, they clearly give the creditor an interest in the debtor's property which he would not have absent agreement, and provide the creditor with some security against the debtor's default in payment.[8] As such, they fall within the definition of security interest required to be disclosed under TILA and Regulation Z.

Blazer's contention that the Fourteenth Amendment to the United States Constitution requires notice and a hearing before execution on a judgment by confession also focuses on the wrong stage of judicial proceedings. Blazer itself concedes that judgment may be entered without prior notice and a hearing, and as discussed above this constitutes a surrender of valuable rights.

Moreover, while due process may require notice and a hearing before the taking of property *prior* to entry of a judgment, *see*

*Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), it is not at all clear that cognovit clauses which allow entry of a judgment without such notice and hearing are constitutionally invalid *per se.* In *Swarb v. Lennox,* 405 U.S. 191, 200, 92 S.Ct. 767, 772, 31 L.Ed.2d 138 (1972), the Supreme Court affirmed a lower court ruling that statutory provisions for execution on confessed judgments after issuance of notice are not facially unconstitutional, provided the debtor has knowingly and voluntarily signed the cognovit clause waiving his right to prejudgment notice and hearing. *See also First National Bank in De-Kalb v. Keisman,* 47 Ill.2d 364, 265 N.E.2d 662 (1970) (cognovit clause not constitutionally invalid on its face). Even if under this case authority Nesbitt were able to challenge the entry of a judgment based upon the cognovit clause in her note, the availability of that course of action would not take Blazer's right to enter such a confessed judgment outside the definition of a security interest for purposes of TILA. Such a challenge would necessarily be post-judgment in nature and thus does not remove the very qualities that make a cognovit clause a security interest. The court concludes that a confession of judgment clause constitutes a security interest for purposes of TILA and must therefore be disclosed.

Since the confession of judgment clause in the Nesbitt note was a security interest for purposes of TILA and Regulation Z, Blazer was also obligated to identify the property subject to the security interest. 12 C.F.R., § 226.8(b)(5). There is no description in Blazer's disclosure statement of the property to which the confession of judgment clause relates. Nesbitt contends—and Blazer does not dispute—that

---

7. General Order 6–4, described above, does not purport to afford the judgment debtor a *de novo* hearing before execution on the confessed judgment. It merely requires that the judgment debtor be served.

8. The simple entry of a confessed judgment is not without effect on the judgment debtor as Blazer seems to suggest. Entry of a judgment

allows a judgment creditor to create a lien on the debtor's real estate, and thus encumber the debtor's right to use the property, simply by recording the judgment. Interest on the judgment begins to accrue from the time of its entry rather than the time of its execution. Ill.Rev.Stat., ch. 77, §§ 1 and 7.

the confession of judgment clause extended to her principal place of residence.[9] Under Regulation Z, 12 C.F.R. § 226.9(b), if a creditor acquires a security interest under a loan agreement in the debtor's residence it must disclose that fact to the debtor and give him notice of his right to rescind the agreement within three days. Blazer failed to make either of these disclosures. Nesbitt is therefore entitled to summary judgment as to liability on her claims that Blazer violated TILA and Regulation Z in failing to describe the security interest created by the confession of judgment clause and the property subject to such security interest, and Nesbitt's right to rescind the agreement.

B. *Mills Claim that Blazer Failed to Describe Adequately the Security Interest Created by the Confession of Judgment Clause and to Disclose that After-Acquired Property Was Subject to Said Security Interest.*

 The note in the Mills transaction contains a confession of judgment clause identical to that in the Nesbitt note, except for an additional sentence which states, "Creditor irrevocably waives and releases all rights to make a judgment confessed hereon on any real estate which is used or expected to be used as the principal residence of the undersigned." The Mills disclosure statement, unlike the Nesbitt disclosure statement, refers to the confession of judgment clause in the portion of the statement captioned "SECURITY AGREEMENT":

"To secure the payment of the above-described loan and any further advances to the undersigned, Debtor(s) grant(s) a security interest to the Secured Party in the following described property .... A confession of judgment which may, upon filing, constitute a lien on all real estate

and personal property of Customer(s) pursuant to the laws of the State of Illinois, except real estate which is used or is expected to be used as the principal residence of Customer(s)." [10]

Mills contends that the foregoing disclosure is inadequate in that (1) it fails to inform the debtor that after-acquired property is subject to the security interest, and (2) it fails to disclose that judgment can be entered against the debtor without prior notice or a hearing.

With respect to the former claim, Regulation Z, 12 C.F.R. § 226.8(b)(5) provides:

If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be *clearly* set forth in conjunction with the description or identification of the type of security interest held, retained or acquired (emphasis supplied).

Blazer argues that the words "may upon filing" sufficiently convey to the debtor that the security interest created by the confession of judgment clause extends to property acquired in the future or after the loan agreement is executed. Blazer misconstrues the thrust of the regulation. As discussed in *Tinsman v. Moline Beneficial Finance Co.,* 531 F.2d 815 (7th Cir.1976) and *Basham v. Finance America Corp.,* 583 F.2d 918 (7th Cir.1978), *cert. denied,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979), in a somewhat different context, the time factor is the critical piece of information that the debtor must be given. In those cases, the court held that a creditor's failure to inform the debtor that state law limits on security interests in after-acquired property to property obtained within ten days after the secured party gives value was misleading and thus violated the regulation. In this case there is no mention at all that Blazer's interest in Mills' property goes beyond

---

9. The Mills disclosure statement, in contrast, expressly waives any lien upon her residence that may arise from the confession of judgment.

10. For all the reasons set forth in Section II, B of this opinion, the confession of judgment

clause in the Mills note constitutes a security interest. The court notes, moreover, that, by the above-quoted language, Blazer itself characterized the Mills confession of judgment clause as a security interest even more explicitly than it did in the Nesbitt transaction.

goods owned at the time the security agreement was signed. The above-quoted language is ambiguous. It may be interpreted in one of two ways: (1) that Blazer holds a security interest in property owned by Mills at the time of the signing of the Security Agreement, which will become effective upon filing of the confession of judgment, or (2) that Blazer retains a security interest in all property owned by Mills at the time it files the confession of judgment, whenever that event occurs. The ambiguity is heightened by Blazer's failure to indicate when a confession of judgment is filed. Blazer has thus failed to clearly set forth that its security interest extends to after-acquired property as required by § 226.8(b)(5).[11]

■ Mills is also entitled to summary judgment with respect to her second claim. This court agrees with the decision in *Engle v. Shapert Construction Co., supra,* wherein the court concluded that § 226.8(b)(5) requires, at a minimum, that the creditor disclose that judgment may be entered on the basis of a cognovit clause without prior notice to the debtor or a hearing.

C. *Nesbitt's Claims that Blazer Made Inadequate Disclosures Regarding Its Security Interest in Furniture, Household Goods, and Appliances*

The Security Agreement in the Nesbitt transaction grants Blazer a security interest in "[a]ll furniture, appliances and other household goods and chattels located in or about Debtor's residence at the address shown above." During discovery Blazer produced a financing statement which listed 23 items of Nesbitt's personal property subject to the aforementioned security interest. Nesbitt claims that Blazer has violated the security interest disclosure provisions of TILA and Regulation Z in four respects: (1) it failed to refer in its disclosure statement to the financing statement itemizing personal property and to furnish Nesbitt with a copy of said statement; (2) the disclosure statement does not clearly inform

the debtor that after-acquired property is subject to the security interest; (3) the financing statement constitutes additional information which contradicts the information on the disclosure statement; and (4) the disclosure statement does not adequately identify the type of security interest or the property subject to it. Magistrate Jurco recommended that Nesbitt be granted summary judgment with respect to claim (1). She did not discuss Nesbitt's remaining claims. The court will deal with these claims first.

■ Blazer is entitled to summary judgment with respect to claim (2). Regulation Z requires only that a creditor clearly inform the debtor if after-acquired property *will be* subject to a security interest. Nesbitt contends that the language of the Security Agreement is ambiguous because it does not expressly state that the security interest *may* extend to future property acquisitions. In responding that the above-quoted language can only be read to extend to property located in Nesbitt's residence at the time she granted the security interest, and it therefore had no additional disclosure responsibilities under § 226.8(b)(5), Blazer effectively concedes that after-acquired property would not be subject to the security interest. Given this concession, there can be no violation of § 226.8(b)(5) because no such security interest exists. *Cf. Flesher v. Household Fin. Corp. of Ohio,* 640 F.2d 861, 862 (6th Cir.1981) (creditor need not disclose absence of security interest in after-acquired property).

■ Nesbitt's claim regarding Blazer's failure to disclose a security interest in after-acquired property might alternatively be read as violating the disclosure requirements of TILA and Regulation Z because the Security Agreement misleads the debtor into believing that after-acquired property will be subject to the security interest. A reasonable interpretation of the language in

---

**11.** If the court were to accept Blazer's argument that the language "may, upon filing" clearly conveys that a security interest is created in property acquired after the signing of the

security agreement, the disclosure statement would, in any event, violate the 10-day rule enunciated in *Tinsman v. Moline Beneficial Finance Co., supra.*

question leads to the conclusion that only property located in Nesbitt's residence at the time of the execution of the agreement would be subject to its terms. The language is in the present tense and Nesbitt's interpretation of it to extend to after-acquired property requires the unnecessary injection of an implied subordinate clause ("all furniture ... [which will be] located in debtor's residence"). To claim that it misleads the debtor thus requires a strained and awkward reading.

■ Blazer is also entitled to summary judgment on claim (3). Nesbitt contends that the financing statement—which itemizes a limited number of pieces of personal property—contradicts the reference to "all furniture, appliances and other household goods and chattels" in the disclosure statement, in violation of 12 C.F.R. § 226.6(c), which permits a creditor to provide the debtor with additional, but not required, information, as long as it does not contradict required disclosures or mislead or confuse the debtor. The problem with Nesbitt's claim is that she was never provided with the financing statement and thus could not have been confused or misled by it.

■ Blazer is likewise entitled to summary judgment on claim (4). Nesbitt's contention that, in order to adequately describe the type of security interest it had Blazer was required to inform her of its perfected security interest in certain pieces of personal property by virtue of its filing of the financing statement, misconstrues the purpose and effect of the filing requirements under Illinois law. The provisions for filing and perfection of security interests define the rights and relationships of secured creditors vis-a-vis third parties, *viz.,* other creditors and purchasers of the secured property. *See* Ill.Rev.Stat. ch. 26, §§ 9–307, 9–312. They do not expand, contract, or alter the creditor's rights as

against the debtor whose property is subject to the security interest. Since the fact of filing or perfection does not affect the rights or obligations of the creditor and debtor with respect to each other, such disclosure is not required. Similarly, because the financing statement did not alter Blazer's already existing and disclosed rights in the pieces of property itemized, there was no need to identify these particular items.

■ Nesbitt also contends that Blazer's identification of the property subject to the security interest was inadequate because it failed to limit the security interest to property owned by Nesbitt and located in or about her residence. In support of this contention she relies on *Tinsman v. Moline Beneficial Finance Co., supra.* In that case the Seventh Circuit Court of Appeals noted that certain language in a disclosure statement describing secured property might lead a debtor to "conclude that goods belonging to a relative or lodger living in the debtor's house are encumbered by the security interest." 531 F.2d at 819. The clause in question, however, was different from the language here. In *Tinsman,* the agreement provided for a security interest in "all of the consumer goods ... now owned or hereafter located in or about the place of residence of the Debtors' [sic] at the address shown above." *Id.* at 818. The language thus set up two categories of secured property: goods owned by the debtors and goods located at their residence, creating the false impression that goods located at their residence but not owned by them would be subject to the security interest. Here the agreement simply provides for a security interest in goods "located in or about the Debtor's residence ...." The misleading dichotomy is thus absent. This court does not believe that such language can reasonably be read to suggest a security interest in goods other than those owned by Nesbitt.[12]

12. The court also notes that the focus of the Tinsman decision, and the proposition for which it is most frequently cited, was disclosure of state law limitations on security interests in after-acquired property. This court has found no other decisions holding that language disclosing a security interest in property located at the debtor's residence is misleading, and at least one court has expressly disapproved

Nesbitt's final claim, and the one on which Magistrate Jurco recommended summary judgment in her favor, is that Blazer was required, under 12 C.F.R. § 226.8(b)(5), to inform her of the separate financing statement and furnish her with a copy of it. Section 226.8(b)(5) provides in relevant part:

> In any such case where a clear identification of . . . property [subject to a security interest] cannot properly be mae on the disclosure statement due to the length of such identification, the note, other instrument evidencing the obligation, or separate disclosure statement shall contain reference to a separate pledge agreement, or a financing statement, mortgage deed of trust, or similar document evidencing the security interest, a copy of which shall be furnished to the customer by the creditor as promptly as practicable.

Blazer focuses on the conditional clause of the above-quoted language, contending that, since it was able to make a clear identification of the property subject to the security interest, it was not required to disclose or furnish any other documents listing the property. Nesbitt, on the other hand, focuses on the mandatory portion of the regulation, arguing in essence that a financing statement must always be disclosed because its existence necessarily implies an inability to identify the secured property clearly on the disclosure statement. This court agrees with Blazer's position and concludes that where, as here, the identification on the disclosure statement of the secured property is clear, a creditor need not disclose to the debtor financing statements or other documents which more specifically itemize said property.

The property subject to a security interest is identified in the Nesbitt disclosure statement as "all furniture, appliances and other household goods and chattels...." Numerous courts have held identical or similar language requisitely clear. *Anthony v. Community Loan & Inv. Corp.*, 559 F.2d 1363, 1368–69 (5th Cir.1977); *Mat-*

this view. *Anthony v. Community Loan & Inv.*

*ter of Dickson*, 432 F.Supp. 752, 757 (W.D. N.C.1977); *Gibson v. Family Finance Corp.*, 404 F.Supp. 896, 898 (E.D.La.1975) (dicta). Moreover, the Federal Reserve Board has expressed the view that such language satisfies § 226.8(b)(5). In FRB Letter of August 26, 1971, [1969–1974 Transfer Binder] CCH Consumer Credit Guide ¶ 30,727, it stated:

> The intent of § 226.8(b)(5) of Regulation Z is that the customer should be provided a disclosure of the security interest taken as a result of the consumer credit transaction. It is staff's opinion that disclosing to the customer the fact that a security interest will be taken on his household goods and other personal property is adequate to meet the provisions of § 226.8(b)(5) without listing each item.

This court agrees that language such as that employed by Blazer in the Nesbitt transaction satisfies the "basic purpose behind § 226.8(b)(5) [which] is to give notice to the borrower . . . so he can make a comparison of credit terms available to him." *Slatter v. Aetna Finance Company*, 377 F.Supp. 806 at 809 (Ga.1974). Blazer is therefore entitled to summary judgment with respect to this claim.

### III.

### CONCLUSION

For all of the reasons set forth in this memorandum and order, this court concludes that plaintiff Nesbitt and the class which she represents are entitled to partial summary judgment as to liability with respect to the claim that Blazer violated TILA and Regulation Z in that it failed to disclose the security interest created by a confession of judgment clause and failed to identify the property subject to said security interest. Plaintiff Mills and the class which she represents are entitled to partial summary judgment as to liability with respect to the claim that Blazer violated TILA, and Regulation Z, in failing to disclose that after-acquired property was sub-

*Corp.*, 559 F.2d 1363, 1369 (5th Cir.1977).

ject to a security interest and to adequately describe the security interest created by a confession of judgment clause. With respect to all other claims Blazer's motion for summary judgment is granted.