**In re Edward MATZULIS, Debtor.**

**Edward MATZULIS, Plaintiff,**

**v.**

**LOMAS AND NETTLETON COMPANY, Defendant.**

**Bankruptcy No. 86–01964S.
Adv. No. 87–0035S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

June 10, 1987.

Michal Fox, Philadelphia, Pa., for debtor/plaintiff.

David B. Comroe, Rebecca M. Landes, Philadelphia, Pa., for defendant/Lomas and Nettleton Co.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The resolution of this matter, by reason of our previous decisions, has devolved to a single narrow issue: may a consumer asserting a violation of the federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq. (hereinafter referred to as "TILA"), prevail on the basis of a violation of the TILA argued in his Brief, but not expressly set forth in his Complaint? We answer this question affirmatively, especially since the consumer's counsel here specifically requested timely permission to conform her Complaint to her legal arguments, and thus we shall grant the Debtor the full relief which he seeks, i.e., a reduction of the Defendant's Proof of Claim to $255.36.

On April 21, 1986, the Debtor, EDWARD MATZULIS, filed this Chapter 13 bankruptcy case. On January 21, 1987, the Debtor further filed the instant adversarial proceeding, and, on March 18, 1987, filed herein an Amended Complaint Objecting to Secured Claim of the Defendant, his resi-

dential mortgage, LOMAS & NETTLE-TON COMPANY (hereinafter referred to as "the Mortgagee"). The contents of the Proof of Claim of the Defendant, filed January 9, 1987, were, as edited by us, as follows:

| | |
|---|---|
| 6 payments & late charges | $1,049.36 |
| Interest on arrears | 227.12 |
| "Attorney's Fees—Foreclosure/Bankruptcy" | 275.00 |
| "Record Owner & Lien Certificate" | 156.00 |
| Total | $1,707.48 |

The Amended Complaint recited two Counts, the first of which, designated as an "Act 6 Claim," evoking Act 6 of 1974, 41 P.S. § 101 et seq., challenged the Defendant's imposition of attorney's fees in excess of $50.00, in light of the fact that the Defendant had not yet instituted foreclosure proceedings at the time of the bankruptcy filing, and the presence of 41 P.S. § 406(3), which limits pre-suit attorney's fees to $50.00; and the Defendant's claim for interest on arrears, as contrary to numerous recent decisions of this Court. In light of the decisions of Judge Fox and former Chief Judge Goldhaber of this Court in, respectively, *In re Schwartz*, 68 B.R. 376, 377–79 (Bankr.E.D.Pa.1986); and *In re Cervantes*, 67 B.R. 816, 820–21 (Bankr.E.D.Pa.1986), the Defendant conceded the attorney's fee issue. In light of the decisions in *In re Rice*, C.A. No. 87–1235 (E.D.Pa., Order filed April 23, 1987) (per BECHTLE, J.); *In re Capps*, 71 B.R. 592 (E.D.Pa.1987) (per GILES, J.); *In re Harmon*, 72 B.R. 458, 461–62 (Bankr.E.D.Pa., 1987) (per TWARDOWSKI, CH. J.); *In re Martin*, 72 B.R. 126, 127 (Bankr. E.D.Pa.1987) (per SCHOOL, J.); *In re Fries*, 68 B.R. 676, 681–82 (Bankr. E.D.Pa.1986) (per FOX, J.); and *In re Small*, 65 B.R. 686 (Bankr.E.D.Pa.1986) (per SCHOLL, J.), the Defendant conceded the interest on arrears issue. Thus, the Proof of Claim, by agreement of the parties, was whittled down to $1,255.36.[1]

The Second Count of the Amended Complaint recited that the disclosure statement given to the Debtor "contains material violations of the [TILA and its Regulations] in that it: ...", and then goes on to recite specific violations in the disclosure of late charges, the finance charge, and the annual percentage rate (hereinafter referred to as "the APR") in the transaction.

On April 29, 1987, counsel for both parties appeared before us and submitted a Stipulation, which presented the matter to us on a case-stated basis. The Debtor's Counsel also submitted a Brief to us at that time. The Stipulation, in addition to including the Defendant's concession on all but the TILA issue, recites that "[t]he only issues remaining to be decided are those raised pursuant to the 'old' [TILA] ... whereby Plaintiff claims that violations of the Act appear from the documents admitted into the record." The Debtor's Counsel also moved orally to again amend her Amended Complaint to conform to the contents of her Brief, and the Court indicated that, since the issue may not be significant to the outcome, it would reserve decision on this point. As a result of this colloquy, we entered an Order of April 30, 1987, allowing the Mortgagee until May 18, 1987, to file its Brief, and the Debtor until May 22, 1987, to file a Reply Brief.

As it develops, we conclude that justice is best served by considering the issue which the Debtor sought to call to our attention on April 29, 1987, and deciding this issue, and, ultimately, the TILA issue in this case, on this basis, in favor of the Debtor. Without deciding the first two issues under the TILA which the Debtor briefed, which he raised in his Complaint and the Defendant also briefed, i.e., whether the conditions upon which late charges would be imposed were adequately disclosed and whether the APR was sufficiently highlighted on the form, we must confess that we consider them both to be much more difficult to resolve than the security-interest issue belatedly raised by the Debtor's counsel in her Brief.

---

1. The Debtor, in his Brief, cites the figure as $1,255.35. Obviously, there is a mathematical error of one cent in his computation.

On the other hand, the merits of this third issue briefed by the Debtor, i.e., that the disclosure of the security interests actually taken in the mortgage violated the then-applicable sections of the TILA and Regulations, former 15 U.S.C. § 1638(a)(10) and 12 C.F.R. § 226.8(b)(5), stand out conspicuously. The disclosure statement recites that security includes the property in issue and "all after-acquired property ... and any future advances, all of which are described in the accompanying mortgage instruments." However, the mortgage itself, while specifically including security in "the following described housing appliances, which are, and shall be deemed to be fixtures ... namely, PLUMBING, HEATING, LIGHTING, COOKING EQUIPMENT, AND S/S," contains no reference to security in after-acquired property or to the mortgage's serving as security for future advances. Thus, as in *In re Johnson-Allen*, 67 B.R. 968, 974, where we reached our result after an exhaustive recitation of the applicable precedents, which need not be repeated here, *id.* at 971–73, we must conclude that "[t]he disclosure is in one sense under-inclusive and in another over-inclusive" and that "the disclosures simply fail to jive at all with the security actually taken in the mortgage, which is of course the crucial consideration." *See also Martin, supra*, 72 B.R. at 127–29.

The Mortgagee, perhaps because it is represented by the same counsel who also represented the mortgagee in *Johnson-Allen*, does not argue the merits of this claim, but rather argues exclusively that, since the Debtor failed to include the phrase *"inter alia"* or "among other things" in the paragraph where he enumerated the allegedly applicable violations, he "is precluded from raising this issue at this time." In light of our statements in Court on April 29, 1987, we believe that it was clear that we were reserving decision, and not ruling either way on whether the Debtor could argue TILA violations not included in his Complaint. Hence, the Mortgagee must have understood that the merits of this alleged violation were in issue, as well as the propriety of raising it at this juncture. We believe, as a result, that the Mortgag-

ee's failure to brief this issue on the merits represents a perceived weakness on the merits and a total resort to the pleadings issue as a means of avoiding a judgment for the Debtor on this point.

We believe that justice, an assessment of the impracticalities of ruling otherwise, the text of the pertinent Federal Rules of Civil Procedure (hereinafter referred to as "F.R. Civ.P.") 8(a) and 15(b), incorporated herein by Bankruptcy Rules 7008(a) and 7015, respectively, and the indications from the few authorities which we have found on point, all require us to consider the obviously-meritorious security-disclosure issue on its merits, and hence to proceed to enter judgment for the Debtor on this basis.

F.R.Civ.P. 8(a) states as follows:

Rule 8.   General Rules of Pleading

(a) Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.

As the Debtor accurately points out, Wright & Miller clearly indicate, in the following passages, that the important factor in federal pleading is to get into the record the elements necessary to decide a certain issue on a certain theory, not the actual recitation of that theory:

[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it need not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be that evidence on these points will be introduced at trial. C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE, § 1216, at 121–23 (1969).

The federal rules effectively abolish the restrictive theory of the pleadings doctrine. The text of several rules, ... makes it very plain that the theory of the pleadings mentality has no place under federal practice. *Id.*, § 1219, at 142–43.

Moore concurs. His text states that the federal rules "have done away with" the "theory of the pleadings doctrine," which he defines as "requir[ing] a pleader to state a definite theory of his case, on which theory he must win or fail." 2A J. MOORE, FEDERAL PRACTICE, ¶ 8.14, at 8–84 (2d ed. 1987). He therefore concludes as follows:

> Thus, under the federal rules, the parties are granted the relief to which they are entitled under the facts regardless of the failure to plead the proper theory. A party is not "required to pick and stick to one theory of law ... only to find when he gets to trial that he has chosen the wrong one." [quoting C. Clark, *Proceedings of Cleveland Institute on Federal Rules* 234 (1938) ]. The fact that a plaintiff may have erred in his choice of legal theory will not preclude him from obtaining relief under another legal theory. J. MOORE, *supra*, ¶ 8.14, at 8–86 to 8–87.

Therefore, it is clear that the error of the Debtor's counsel in failing to plead a certain TILA violation is eminently correctable. Under Rule 8(a), it is not necessary for the Debtor to have stated any specific violation of the TILA on which he relied. Arguably, he did not even change his basic legal theory, which was and remained the TILA, but merely what might be termed the specifics of his legal theory. All that is necessary to rule on a TILA claim, in most cases, is a review of the pertinent documents. The "material point," per Wright and Miller, and evidence relevant thereto necessary to sustain the Debtor's claim on the theory of the violation not cited in the Amended Complaint was thus in the record. We can see no logical reason why we should encourage vague pleadings, *but cf. In re American International Airways, Inc.*, 66 B.R. 642, 645–46 (Bankr.E.D.Pa. 1986), by penalizing the Debtor for being more specific in his pleadings than he had to be, particularly when it is clear that the Mortgagee was not prejudiced in any way by the failure of the Debtor to include the words *"inter alia"* or "among other things" in his recitation of the specific violations in issue, even though, as this case points out, to do so would have represented the better practice.

Moreover, the Debtor, prior to the Mortgagee's briefing, orally moved to amend the Complaint pursuant to F.R.Civ.P. 15(b), which provides as follows:

> (b) Amendments to Conform to the Evidence.
>
> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issue. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

It cannot be gainsaid that F.R.Civ.P. 15(b) is to be liberally applied, as the Rule states on its face that leave to amend shall be "freely" given, and such a motion can be made at any time in the proceedings, "even after judgment," as the Rule itself provides. As Wright & Miller observe, "Rule 15(b) deals a heavy blow to the doctrine [of the theory of the pleadings] by permitting amendments as late as the trial and treating issues [thus raised] as if they had been raised in the pleadings ...;" C. WRIGHT & G. MILLER, *supra*, § 1219, at 143.

The Mortgagee may be acknowledging the force of F.R.Civ.P. 15(b) when it states, in its Brief, that the Debtor "is precluded from raising this issue *at this time*" (emphasis added). What the Mortgagee apparently argues would be appropriate would be for us to labor our way through an analysis of the Debtor's other alleged TILA violations and then, if we decide in favor of the Mortgagee on these, entertain (and it would appear to be an abuse of discretion to deny) the Debtor's Motion to amend, and *then* inevitably rule in favor of the Debtor. We fail to see how following such a course would be practical or just to any of the parties, and would, in our view, merely inject unnecessary delay into the proceedings, which we will not countenance where the result is clear and can be reached by a less circuitous path.

We have located only two analogous TILA cases, *Robinson v. Central Loan & Finance Corp.*, 609 F.2d 170 (5th Cir.1980); and *Nesbitt v. Blazer Financial Services, Inc.*, 550 F.Supp. 819, 827–28 (N.D.Ill.1982). In *Robinson*, the plaintiff responded to a specific court order that she designate her alleged TILA violations by reciting two specific violations. 609 F.2d at 172. In moving for summary judgment, she abandoned one of the initial two contentions and argued a third violation. *Id.* She was unsuccessful on all of her claims, and the lender pressed a counterclaim, which then became the focus of the litigation. *Id.* at 173. At the point when the counterclaim was being litigated, six months after the decision denying all of the claims raised in her motion for summary judgment, the plaintiff attempted to raise yet another new TILA claim. *Id.* She was precluded from doing so, and appealed this determination. *Id.* The Court of Appeals held that the lower court acted within its proper discretion in so precluding the raising of this issue. *Id.* at 173–74.

In *Nesbitt*, the plaintiff pleaded that the lender failed to properly disclose a security interest taken in the transaction, but failed to plead specifically that the presence of a confession of judgment clause in the loan documents triggered this alleged violation. 550 F.Supp. at 827. The court held that,

"under the liberal pleading standards of the [F.R.Civ.P.], her allegations are broad enough to encompass such a claim and sufficient to inform [the lender] of her claim." *Id.* at 827–28.

We believe that both of these authorities support a result in favor of the Debtor here. The Debtor's raising of the security interest-TILA claim at the time that he submitted his Brief was comparable to the manner in which the *Robinson* plaintiff raised her "third claim," and neither the lower court nor the Court of Appeals ever stopped to consider whether the manner in which *this* claim was raised might have been inappropriate. It was only the raising of yet another claim six months after the decision on all of the claims, including the third claim, that the Court of Appeals stated that it was properly within the discretion of the lower court to deny a request to add more claims. We believe that to exercise our discretion to hear the security-interest claim appended at this early juncture would not be an abuse of discretion, and that the *Robinson* decision impliedly supports this conclusion.

The decision in *Nesbitt* is similarly rendered on different facts, and is merely illustrative of how we should exercise our discretion, because the Debtor here, unlike the plaintiff there, overlooked the decisive security-interest issue entirely in his pleadings. The pleadings are hence not so broad here as to include the ultimately-successful claim. However, we believe that allowing an amendment, where the record is sufficient to make out the claim, is in line with the spirit of this decision as well.

█ We therefore conclude that the sparce existing authorities, as well as the general tenor of the F.R.Civ.P., the ends of justice, and practicality, require us to exercise our discretion to consider the obviously-meritorious claim of the Debtor that the erroneous disclosure of the security interests taken in this transaction is violative of the TILA and gives rise to a $1,000.00 recoupment claim, reducing the Mortgagee's valid secured Proof of Claim to

$255.36. An appropriate Order so providing will therefore be entered.

## ORDER

AND NOW, this 10th day of June, 1987, upon consideration of the pleadings, the Stipulation of Facts which constitutes the record, and the respective Briefs of the parties, consistent with the foregoing Opinion, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of the Debtor and Plaintiff, EDWARD MATZU-LIS, and against the Defendant, LOMAS AND NETTLETON COMPANY, and the Proof of Claim filed by the Defendant in this case is hereby reduced to a valid Secured Claim of $255.36.

2. The Mortgagee, the Debtor, and the Trustee are accorded a period of thirty (30) days from the date of this Order to file an Amended Proof of Claim on behalf of the Defendant consistent herewith.

3. The parties are directed to confer to resolve the issue of attorney's fees and costs due to the Debtor's Counsel, but, if they are unable to do so, and the Debtor has made a reasonable demand, the Debtor's Counsel is accorded an opportunity to file a Motion requesting attorney's fees and costs, including compensation on the fee application, if such is necessary, per 15 U.S.C. § 1640(a)(3), within thirty (30) days hereafter, said Motion to be procedurally in conformity with *In re Meade Land and Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975).