In re Martin & Tammy
MITCHELL, Debtors.

Martin & Tammy
MITCHELL, Plaintiffs,

v.

FRANKFORD TRUST COMPANY and
Edward Sparkman, Esquire Standing
Chapter 13 Trustee, Defendants.

Bankruptcy No. 87–00532S.
Adv. No. 87–0264S.

United States Bankruptcy Court,
E.D. Pennsylvania.

July 1, 1987.
Opinion on Reconsideration,
Sept. 25, 1987.*

* See 77 B.R. 524.

David Searles, Philadelphia, Pa., for debtors/plaintiffs.

James H. Gorbey, Jr., Media, Pa., for defendant/Frankford Trust Co.

Edward Sparkman, Philadelphia, Pa., Chapter 13 Standing Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The Motion of the Debtors' Mortgagee, FRANKFORD TRUST COMPANY (hereinafter referred to as "the Mortgagee"), for relief from the automatic stay (hereinafter referred to as "the Stay Motion") and the Debtor's Adversary Complaint against the Mortgagee (hereinafter referred to as "the Complaint"), consolidated for trial, are herein considered together by us. As we

observed in our communications with the parties, we believe that the disposition of this matter involves, in large part, an application of principles which were established in our prior decisions, particularly our most recent Opinion in *In re Crompton*, 73 B.R. 800 (Bankr.E.D.Pa.1987) (hereinafter referred to as *"Crompton II"*).

We determine, first, that the Debtors are entitled to relief on their Complaint, reducing the Mortgagee's secured claim. Then, applying the principles set forth in *Crompton II*, we conclude that, although the Debtors' presently-proposed Plan is inadequate to effect a reorganization, a Plan with certain minimum contents, which we set forth, could be an adequate Plan. Since the terms of such a Plan appear to be within the Debtors' grasp, we shall deny the Stay Motion, conditioned on certain protections for the Mortgagee.

We shall consider the merits of the Complaint first, as the resolution of this matter sets the stage for evaluating the feasibility of the Debtors' Chapter 13 Plan, which in turn is crucial to the resolution of the Stay Motion. The Complaint recites two Claims, the first a request that we determine the extent of the Mortgagee's security interest in the Debtors' residential realty at 4356–58 Leiper Street, Philadelphia, Pennsylvania, and the second a claim that the Debtors are entitled to a $1,000.00 recoupment offset against the Mortgagee's claim due to alleged violations of the federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq., and its explanatory Regulations (hereinafter referred to as "TILA") in the disclosure statement (hereinafter referred to as "the Statement") presented to the Debtors in the mortgage transaction.

We believe that the TILA claim is meritorious. In the Complaint, the Debtors aver that the TILA violations include, but are not limited to, errors in the Statement's disclosure of the security interest taken in the transaction and the finance charge (hereinafter referred to as "FC") and annual percentage rate (hereinafter referred to as "APR"). The Mortgagee answered that, "in the course of the October 14, 1983 residential mortgage transaction," it accu-

rately provided all necessary disclosures, and attached copies of the Statement and numerous other documents relevant to the transaction as exhibits to the Complaint, which, after a colloquy with counsel on April 1, 1987, were admitted into the record.

Our Order of April 2, 1987, issued in light of the colloquy of April 1, 1987, allowed the parties to file opening Briefs on or before May 1, 1987, and reply Briefs on or before May 11, 1987. We moved back the latter date to May 18, 1987, to allow the parties to address the impact of the *Crompton II* Opinion issued on May 7, 1987. In their opening Brief, the Debtors enumerated five specific alleged TILA violations. Especially since the Complaint indicated that it was "not limited" to the two violations specifically enumerated therein, we shall consider them all. *Cf. In re Matzulis, Matzulis v. Lomas & Nettleton Co.*, 74 B.R. 552 (Bankr.E.D.Pa.1987) (consumer may raise TILA violations not specifically designated in the Complaint as long as they are briefed).

■ We believe that the violation designated by the Debtors as the "fourth TILA violation," i.e., that the Mortgagee improperly provided "estimated disclosures" on the Statement at a time when it knew the actual figures, is relevant to three of the other alleged violations, i.e., alleged inaccurate disclosure of the amount financed, FC, and APR; inaccurate disclosure of the payment due dates; and improper timing of disclosures.

Although the Statement is dated September 9, 1983, at the top, it is apparent that it was not actually delivered to the Debtors until the date of settlement, October 14, 1983. Estimated disclosures may be given only when the accurate information is "unknown to the creditor," 12 C.F.R. § 226.-17(c)(2), "at the time disclosures are made." Federal Reserve Board Official Staff Commentary, ¶ 17(c)(2), subpara. (1). On the date of settlement, the Mortgagee obviously knew the accurate amount financed, FC, APR, and payment due dates, as well as the amount of payments, as these were set forth in the Mortgage and Note. As the Debtors point out, the Statement misstates, as $15,364.37, the actual amount financed as $15,402.04, thus rendering the FC and APR, calculation of which depends on the amount financed, slightly inaccurate; misstates the date payments were due (disclosed as February 1, 1984, as opposed to the actual date of December 1, 1983); and also misstates the amount of payments (disclosed as "varying from $191.53 to $188.17" when in fact payments *were* $188.17). Any of these inaccuracies would be sufficient to support actionable TILA recoupment-damage claims. *See* 15 U.S.C. §§ 1638(a)(2)(A), (a)(3), (a)(4), (a)(6); and 1640(a)(3). *See generally In re Johnson-Allen*, 67 B.R. 968, 972 (Bankr.E.D.Pa. 1986).

■ The only response of the Mortgagee appears to be that, since the parties contemplated a later settlement date and the date was allegedly moved up "as a courtesy to the Debtors," thus rendering the disclosures incorrect, it should be excused from the inaccuracies in the Statement. Obviously, this is not a defense to a TILA action (*compare* 15 U.S.C. §§ 1640(b), (c), (f), which recite the sole general defenses) because the Mortgagee could quite easily have prepared an accurate disclosure statement on October 14, 1983, or at any time within sixty days of that date, *see* 15 U.S.C. § 1640(b), rather than using the statement prepared on September 9, 1983, and not correcting it, irrespective of the reasons for the change in the settlement date.

In light of this disposition, we need not decide the Debtors' further contention that the Statement inaccurately sets forth the security interest taken, in violation of 15 U.S.C. § 1638(a)(9), as multiple recoveries for multiple violations are not permitted. 15 U.S.C. § 1640(g). However, we do note that the Statement fails to recite the fact that the Mortgage also covers future advances, as per the third paragraph of ¶ 21 thereof. *See In re Cervantes*, 67 B.R. 816, 818–19 (Bankr.E.D.Pa.1986); *Cf. In re Martin*, 72 B.R. 126, 128 (Bankr.E.D.Pa. 1987); *Johnson-Allen*, *supra*, 67 B.R. at 973–74; and *In re Perry*, 59 B.R. 947, 950–51 (Bankr.E.D.Pa.1986).

■ The Debtors' claim that we can reduce the amount of the Mortgagee's secured claim to the present value of the premises pursuant to § 506(a) is also correct. *See In re Jablonski,* 70 B.R. 381, 385–86 (Bankr.E.D.Pa.1987). However, there is some dispute arising about the amount of the secured claim, even though the Mortgagee stipulated that the present value of the premises is $15,000.00, far less than the Mortgagee's secured Proof of Claim in the amount of $27,765.03, and we are prepared to assume, as we did in *In re Crompton,* 68 B.R. 831, 835 (Bankr.E.D. Pa.1986) (hereinafter referred to as *"Crompton I"*), that the value will remain the same at the crucial date of confirmation of the Plan.

Therefore, we must, consistent with our calculations in *Jablonski,* 70 B.R. at 390, reduce the Mortgagee's secured claim by the sum of prior City liens in the amount of $539.01, plus the TILA recoupment claim of $1,000.00, or by $1,539.01. The valid Secured Claim of the Mortgagee would hence appear to be $13,460.99.

■ A further unique problem arises here, however, due to the fact that, about a month after the Debtors filed their bankruptcy case on February 2, 1987, a garage which had been part of the premises was destroyed by fire, resulting in the issuance of a $2,500.00 check by a fire insurer of the premises made out to the Debtors and the Mortgagee as loss payee. The Mortgagee contends that it has a security interest in the check as well as the remaining premises. The Debtors indicate an intention to pay this sum to the Mortgagee, but further argue that this payment should reduce the balance due on the Mortgagee's secured claim.

Although, in the colloquy with counsel, on April 1, 1987, the Court requested the parties to brief this issue, neither party has developed a theory, supported by citations, as to how we should work this $2,500.00 sum into the calculations. Nevertheless, logic dictates to us that the Debtors should not be able to reap a windfall due to the post-petition fire, which obviously reduced the value of the premises, and hence also reduced the security interest of the Mortgagee. The fire clearly did decrease the value of the Mortgagee's security interest by, presumably by the amount of the $2,500.00 insurance recovery. Therefore, we conclude that, although the Debtors should endorse the $2,500.00 check and remit it to the Mortgagee, this payment should not be deemed to decrease the Mortgagee's security interest beneath the $13,-460.99 figure. It will, of course, decrease the unsecured balance of the Mortgagee's Claim.

We must note that we are influenced in this decision of a close question by the equities in favor of the Mortgagee in the parties' relationship. The Debtors stipulated, in the colloquy of April 1, 1987, that they have only ever made *three* mortgage payments, in December, 1983; January, 1984; and February, 1984. Since there is an absence of any evidence that the Debtors were swindled in purchasing a defective premises, like the Debtor in *Crompton, see Crompton I,* 68 B.R. at 833, we believe it only fair that, here, the Mortgagee receive some "up-front" payments, especially since the success of any Debtors' Plan is considerably more doubtful than that of the Debtor in *Crompton. See Crompton II,* at 809, 810; and pages 598–99 *infra.*

We therefore conclude that the extent of the Mortgagee's secured claim, per 11 U.S.C. § 506(a), is but $13,460.99, but we shall require the Debtors to pay the $2,500.00 insurance payment to the Mortgagee as a condition for providing adequate protection to the Mortgagee, and we shall not reduce the Mortgagee's secured claim further on account of this payment.

■ The only issue remaining before us is the Stay Motion, brought pursuant to 11 U.S.C. § 362(d), which provides as follows:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in prop-

erty under subsection (a) of this section of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

The Debtor claims that the Motion itself only recites grounds for relief based on § 362(d)(2). This is perhaps technically true, as we note that the Motion does not actually expressly indicate reliance on either particular subsection of § 362(d). However, per *Matzulis, supra,* we believe that we should consider all of the grounds fairly raised by the Motion, fully briefed by the Mortgagee, and concerning which the Debtors had ample opportunity to respond.

The parties had an opportunity to review our *Crompton II* Opinion before submitting their respective Reply Briefs, and have had an opportunity to address the application of the principles which we set forth in that Opinion to the instant case. We must consider whether the Mortgagee has met its burden of establishing a prima facie case for relief on the ground that it is inconceivable that the Debtors could adequately protect the Mortgagee's interests or effectively reorganize, *see In re Ronald Perlstein Enterprises, Inc.,* 70 B.R. 1005, 1007–08 (Bankr.E.D.Pa.1987), *appeal dismissed,* C.A. No. 87–2364 (Order filed June 25, 1987); and *In re Stranahan Gear Co.,* 67 B.R. 834, 836–38 (Bankr.E.D.Pa.1986). On the other hand, we believe that the Debtors' poor past performance and hence unrealistically optimistic presently-proposed Plan requires us to impose upon the Debtors several conditions in formulating a modified Plan, which they may find impossible to achieve, in requiring that the Mortgagee be adequately protected and that the Plan proposed will indeed be likely to allow the Debtors to effectively reorganize. If such a Plan proves impossible for the Debtors to perform, the Mortgagee will of course be ultimately granted relief from the stay.

■ We begin our analysis by focusing on § 362(d)(2). Consistent with our holding in *Crompton II,* at 811, we reiterate that, in an instance where a creditor is undersecured, the Debtor cannot be said to have an equity in the property secured, per the meaning of that term in § 362(d)(2)(A). An opposite contention is, in our view, totally inconsistent with the Debtors' efforts to use the lack of equity, as it were, to reduce the secured claim of creditor and thus attempt to put together a Plan which pays that creditor considerably less than the full amount of its secured Proof of Claim, as is the case here. Hence, the Mortgagee can succeed under § 362(d)(2) unless the Debtors can meet the requirement of § 362(d)(2)(B) that they are proposing a realistic Plan, likely to result in a successful reorganization.

■ The Debtors' Second Amended Plan proposes payments of $150.00 monthly from April, 1987, to March, 1989; $250.00 monthly from April, 1989, to March, 1991; and $300.00 monthly from April, 1991, to March 1992. The total to be paid will hence be $13,200.00. The Debtors contend that this sum is sufficient to protect the Mortgagee, because they calculate that the $2,500.00 insurance payment will be paid and deducted from the $13,460.99 secured claim of the Mortgagee, which claim admittedly must be totally liquidated by the terms of the Plan, leaving a balance of $11,210.99. Taking into account the Trustee's anticipated ten (10%) percent commission, they contend that a figure which we calculate from the foregoing would be $12,332.09 which would need to be paid to fund the Plan, and that their projected remittance of $13,200.00 will clearly be adequate to fund a minimally-requisite plan.

In two significant senses, we believe that the Debtors have understated their obligations under a potentially-feasible Plan. First, as we have already indicated, we are not prepared to deduct the $2,500.00 insurance payment from the $13,460.99, which we have deemed is the Mortgagee's valid secured claim. Therefore, the Debtors must fund $13,460.99 over the five-year life of the Plan.

Secondly, as *Crompton II* makes clear, at 800–07, it is necessary that interest, at

the going market rate, be paid on that portion of the property distributed under the Plan which is to be deferred after confirmation if the prerequisite of 11 U.S.C. § 1325(a)(5)(B) is to be satisfied. While we are not ruling on Plan confirmation at this time, we are, in our attached Order, attempting to assure that confirmation is not delayed, to the unfair detriment of the Mortgagee. We do not believe that we can delay considering this element in our equation of determining whether the Debtors can form a feasible Plan, as the Debtors request. Given their abysmal pre-petition payment record, and their own lack of confidence in their post-petition payment ability which is suggested by a Plan that begins at a payment rate half that at the end of the Plan, we cannot say that the Debtors are not imposing delay solely for its own sake, and we cannot permit such an attempt to succeed.

Beginning with $13,460.99 and positing a ten (10%) percent interest rate [1] applied in *Crompton II*, we note that the interest payable, if equal payments are made over five years, would be about $3,600.00. Adding this amount to the $13,460.99 also payable results in a balance of about $17,000.00 that must be paid to the Mortgagee in a feasible Plan. The Trustee's commission of ten (10%) percent would make the total amount minimally payable to fund the Plan approximately $18,700.00. Payments of $300.00 monthly for the *entire* five-year period would generate only $18,000.00. Again noting the Debtors' poor payment record, we cannot conclude that any Plan contemplating payments of less than $300.00 monthly, beginning immediately, would be likely to result in a Plan that the Debtors are likely to fulfill, and hence would result in an effective reorganization.

In *Crompton II*, at 810–11, we cited those cases which hold that § 362(d)(2) does not apply to a consumer bankruptcy and which hold that any case in which a debtor contemplates using a Chapter 13 Plan as a means to save a residence for his or her family renders the secured premises "necessary" to an effective reorganization, for purposes of § 362(d)(2)(B). Without deciding whether we would follow any of these lines of cases, we observe that the element of the realism of a proposed Plan of the Debtors in effecting a successful reorganization is highly relevant in determining whether a creditor is "adequately protected" pursuant to § 362(d)(1). *See In re Grant Broadcasting of Philadelphia, Inc., (First Opinion)*, 71 B.R. 376, 388–89 (Bankr.E.D.Pa.1987), *aff'd*, C.A. No. 87–1772 (E.D.Pa., Memorandum and Order filed June 24, 1987) Available on WESTLAW, DCT database. Hence, our § 362(d)(1) analysis leads us to the same inquiry as to whether the Debtors can possibly formulate a realistic Plan.

We believe that the interests of the Mortgagee, again given the Debtors' circumstances, which we find less compelling than those of the Debtor in *Crompton*, will be adequately protected only if the Debtors make a considerably better performance than that contemplated by their Second Amended Plan. First, we believe that they must begin remitting payments of at least $300.00 monthly, as soon as possible. Secondly, as in *Crompton II*, we are requiring the Debtors to remain current on future realty taxes and to maintain adequate insurance on the premises. Thirdly, we are requiring the Debtors to remit the $2,500.00 insurance payment to the Mortgagee forthwith. Finally, we are setting forth a schedule, to which we anticipate no deviation, that will require the Debtors to submit a Third Amended Plan consistent with this Opinion and will require a Confirmation Hearing to be conducted promptly.

While it will require considerably more in the way of financial performance from the Debtors than they have accomplished over the past three-and-a half years since they purchased the premises, and

---

**1.** We note that the interest rate of the mortgage is thirteen and three-quarters (13¾%) percent, and that interest rates have risen slightly since we drafted *Crompton II*, where we applied a ten (10%) percent rate, at 807. The Debtors therefore will receive a significant advantage over the terms of their original mortgage terms in these calculations. We also may be, if anything, too optimistic in estimating the "market rate" in these calculations.

more than they presented in any proposed Plan, the proposal and performance of such a Plan does not seem to us to be out of the Debtors' reach. We note, as the Debtors' state in their Brief, that the Debtors presently claim to have income of about $1,260.00 monthly and expenses of only $695.00 monthly. While the latter figure seems low to us for a family of five, including three children aged eight through eleven, the excess income available to the Debtors, if these figures are accepted, is $565.00. This figure is so much in excess of the payments of $300.00 monthly that even such a Plan may not withstand an Objection pursuant to 11 U.S.C. § 1325(b)(1). *See Crompton II*, at 808–09. We also note that the Debtors' first Amended Plan, filed on March 17, 1987, just two weeks before their present Plan, contemplated payments of $280.00 monthly for the entire 60–month period. In any event, payment of $300.00 monthly is a relatively inexpensive sum for shelter.

Since performance according to the terms of such a Plan seems within the realm of possibility, we cannot say that the Mortgagee, on this record, has met its burden of establishing a prima facie case that the Debtors could not conceivably reorganize, as *Perlstein* and *Stranahan Gear* would require for the Mortgagee to succeed on the Stay Motion. We shall therefore deny the Stay Motion at this time, but specifically indicate that this is contingent on the Debtors' performance which we believe is necessary to effectively reorganize, and specifically accord the Mortgagee an opportunity to resume its efforts to obtain relief from the stay without filing a new Motion if the performance of the Debtors falls short.

An Order consistent with the foregoing shall issue.

### ORDER

AND NOW, this 1st day of July, 1987, after colloquy with Counsel on April 1, 1987, on the Motion of FRANKFORD TRUST COMPANY (hereinafter referred to as "Frankford") for Relief from Automatic Stay in the main case and on the merits in the above-captioned Adversary proceeding, and consideration of Briefs and Reply Briefs from the parties, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of the Debtors and against Frankford on both Claims of the Adversary Complaint, and the extent of the value of Frankford in the Debtors' interest in their premises at 4356–58 Leiper Street, Philadelphia, Pennsylvania, is hereby determined to be $13,460.99.

2. Frankford, the Debtors, and/or the Trustee are accorded a period of thirty (30) days from the date of this Order to file an Amended Proof of Claim on behalf of Frankford consistent herewith.

3. Frankford's Motion for Relief from the Automatic Stay is DENIED on the condition that the Debtors do the following:

a. Either pay or reimburse Frankford for payments made by Frankford for fire and other casualty insurance on the premises in issue from this date forward.

b. Remit the $2,500.00 insurance check in their possession to Frankford within ten (10) days.

c. File and serve upon Frankford and the Trustee a Third Amended Plan, on or before July 14, 1987, sufficient to fund payments of at least $18,-700.00 by March, 1992, and requiring the Debtors to remit payments of no less than $300.00 to the Trustee no later than August, 1987.

d. If the Debtors fail to comply with any of the terms of paragraphs 3(a), (b), or (c) herein, Frankford shall provide notice of same to the Debtors and their Counsel. If the default is not cured within ten (10) days, Frankford may certify same to the Court and obtain relief from the stay.

4. A hearing on Confirmation of the Third Amended Plan filed by the Debtors, per paragraph three, shall be heard on

TUESDAY, AUGUST 11, 1987, at 10:00 A.M. in Court Room No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

5. No continuances of the filing deadlines set forth or the hearing date set forth herein will be entertained.

6. In light of the Debtors' success in the Truth-in-Lending Claim in the Adversary Complaint, the parties are directed to confer to resolve the issue of attorney's fees and costs due to the Debtors' Counsel, but, if they are unable to do so, and the Debtor has made a reasonable demand, the Debtor's Counsel is accorded an opportunity to file a Motion requesting attorney's fees and costs, including compensation on the fee application, if such is necessary, per 15 U.S.C. § 1640(a)(3), within thirty (30) days hereafter, said Motion to be procedurally in conformity with *In re Meade Land and Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975).

7. This Order shall be filed and docketed in both the above-captioned main case and Adversary proceeding.