**In re Namie HERBERT a/k/a Tammy Herbert, Debtor.**

**Namie HERBERT a/k/a Tammy Herbert, Plaintiff,**

**v.**

**FEDERAL NATIONAL MORTGAGE ASSOCIATION and GMAC Mortgage Corporation, Defendants.**

**Bankruptcy No. 87–02650S.**
**Adv. No. 88–0046S.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 26, 1988.

Irwin Trauss, Community Legal Services, Inc., Philadelphia, Pa., for debtor/plaintiff.

Thomas I. Puleo, Philadelphia, Pa., for defendant.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

We herein address an adversary proceeding attacking a Proof of Claim and a Motion to Disburse Proceeds from Sale of Real Estate filed by the Debtor's mortgagee in the main bankruptcy case which present the same question: how much of the proceeds of a post-petition sale of the Debtor's realty is the mortgagee entitled? We conclude as follows: (1) The mortgage is merged with a foreclosure judgment obtained by the mortgagee against the Debtor, entitling a mortgagee to only statutory interest subsequent to the entry of judgment, irrespective of the terms of the mortgage; (2) The foreclosure judgment must be allowed as of the date and in the sum at which damages were most recently reassessed, and hence legal interest runs only from the date of the reassessment to the date of the bankruptcy filing; (3) The mortgagee is entitled to its enumerated costs; and (4) The Debtor is entitled to a $1,000.00 recoupment against the mortgagee's claim because the Debtor denies receipt of a disclosure statement required by the federal Truth-in-Lending Act, 15 U.S.C. § 1601 et seq. (hereinafter referred to as "TILA") in the mortgage transaction, and the mortgagee is unable to establish its existence. Therefore, we conclude that the mortgagee is entitled to distribution of $34,779.62 from the sale proceeds, plus its share of the interest earned on the proceeds since settlement.

### B. PROCEDURAL HISTORY

The underlying Chapter 13 bankruptcy case was filed on June 1, 1987. Apparently, it had two predecessor cases in our court: (1) Bankr. No. 82–02702K, a Chapter 7 filing by the Debtor and her now estranged husband, Stephen G. Herbert, on June 10, 1982, which resulted in a discharge on January 27, 1983; (2) Bankr. No. 84–03823K, a Chapter 13 filing by the Debtor only on November 2, 1984, which was dismissed on November 16, 1986. Shortly after the instant filing, on July 16, 1987, the Debtor filed a motion requesting permission to sell her home located at 12218 Rambler Road, Philadelphia, Pennsylvania, free and clear of any liens, which would then attach to the sale proceeds. The Debtor had purchased the home with her husband on August 7, 1978, and it was deeded to her alone on March 25, 1984. This motion was granted on July 21, 1987, and, on July 24, 1987, the home was sold. Proceeds of $41,147.29 were placed in an interest-bearing account by order of this court pending distribution.

FEDERAL NATIONAL MORTGAGE ASSOCIATION (hereinafter referred to as "FNMA"), the Debtor's mortgagee, filed the motion in the main case presently before us on November 16, 1987, seeking, initially, a distribution of $36,397.99 to it from the sale proceeds.

On or about June 11, 1987, GMAC Mortgage Corp. (hereinafter referred to as "GMAC"), the servicer of FNMA's mortgage, filed a Proof of Claim in the amount of $37,429.82. On January 25, 1988, the Debtor filed the adversary proceeding before us, which raised an Objection to GMAC's Proof of Claim and sought to determine FNMA's rights in the sale proceeds. Among the Debtor's contentions as to why FNMA's claim should be reduced was a TILA recoupment claim.

The adversary proceeding was initially listed for trial on March 9, 1988. FNMA's motion, after several agreed continuances, came before us on March 2, 1988. The Debtor's request to continue this hearing and consolidate it with the trial of the adversary proceeding on March 9, 1988, was granted on the condition that both matters had to be tried on March 9, 1988, and they were. At the trial, the Debtor and Jana Janoske, a representative of GMAC, testified. At its conclusion, we entered an Order directing the Debtor and FNMA to file Briefs on or before April 8, 1988, and May 6, 1988, respectfully. The Debtor was granted permission to file a Reply Brief fifteen (15) days after service of GMAC's Brief. However, although GMAC filed its Brief on May 2, 1988, no

Reply Brief was received until May 23, 1988.[1]

Although the matters before us include an adversary proceeding, there are no apparent material factual disputes, only disputes as to what legal consequences flow from these facts. We are therefore preparing our Opinion in narrative form.

## C. PERTINENT FACTS

On October 1, 1984, FNMA obtained a default judgment in a complaint to foreclose upon the mortgage of the Debtor and her husband. Although the original amount of the mortgage, dated August 7, 1978, was only $27,500.00, and the complaint prayed for damages in the amount of only $29,253.06, FNMA was permitted to assess damages at $31,504.19 in taking judgment. The Debtor's second bankruptcy filing halted the foreclosure sale on this judgment. Thereafter, the ruling of our district court in *Hines v. Pettit*, 638 F.Supp. 1269 (E.D.Pa.), on July 18, 1986, declared unconstitutional the practice of allowing parties plaintiff to assess damages merely by having the counsel present a praecipe to the Prothonotary reciting a higher figure than was prayed for in a complaint.

On January 23, 1987, and February 11, 1987, subsequent to the *Hines* decision and in the interval between the Debtor's two most recent bankruptcy cases, the state court reassessed FNMA's damages in the 1984 foreclosure action at $33,843.30. The Debtor appealed from this reassessment order, but this appeal was dismissed without prejudice to its reinstatement at the conclusion of the Debtor's bankruptcy. Additional costs of $1,224.15 were incurred by FNMA in the execution process thereafter, until the instant bankruptcy intervened to halt the sheriff's sale.

## D. THE CONTENTIONS OF THE PARTIES

The Debtor argues that her mortgage merged with the foreclosure judgment entered on October 2, 1984, thus allowing the mortgagee to collect interest measured only at the Pennsylvania legal rate of six (6%) percent per annum thereafter. Since only $29,253.06 was sought in the original mortgage complaint, the Debtor claims, on authority of *Hines*, that only legal-rate interest may be added to this figure after October 2, 1984. The addition of this interest and the deduction of $5,908.04 in mortgage payments during the 1984 bankruptcy case yields a net sum of $27,556.80. Although the legitimacy of at least $1,212.15 of the costs is not disputed, the Debtor argues that a notation that "fees & costs none all *paid*" on one exhibit should eliminate these items from consideration.[2]

At the hearing, the Debtor produced a large volume of papers which she claimed were kept by her estranged husband in an envelope and were purported to be all of the papers received by the mortgagors at settlement. No Disclosure Statement, as required by the TILA, was among them. Ms. Janoske, the GMAC agent who testified, stated that, despite her efforts to locate same, no TILA disclosure statement had been located in GMAC's files. On the authority of our decision in *In re Pinder*, 83 B.R. 905, 912–14 (Bankr.E.D.Pa.1988), filed after this trial, the Debtor contends that she should receive an additional recoupment of $1,000.00, reducing FNMA's distribution from the proceeds to $26,-556.80.

Not surprisingly, FNMA computes the sum due to it differently. Apparently calculating the balance due at the contract rate through to the present and adding the $1,224.15 sum for costs, it claims that it is

---

**1.** The Debtor attempted to justify this tardy filing by reference to Bankruptcy Rule 9006(f). However, we believe that, when we order Briefs to be filed by a certain date, they must be filed on that date, not three days thereafter. In any event, the Reply Brief was *not* filed on May 20, 1988, the latest conceivable due date by application of Rule 9006(f). Nevertheless, we carefully

read and considered this Brief because it arrived before the issuance of this Opinion.

**2.** The Debtors reference is to Exhibit "D–7," which we were unfortunately unable to locate among the exhibits submitted to us. The Plaintiff's argument on this point is, in any event, too vague to allow us to seriously consider it. See pages 437–38 *infra*.

entitled to distribution of $38,740.17. Attempts are made to distinguish *Pinder* because (1) The Debtor here was purportedly less certain as to whether she received a disclosure statement than was the *Pinder* Debtor; and (2) The Complaint recites only a violation of TILA in disclosures given, not the absence of a Disclosure Statement.

### E. THE MORTGAGE DOES MERGE WITH THE FORECLOSURE JUDGMENT, ALLOWING ONLY INTEREST AT THE LEGAL RATE AFTER CALCULATION OF THE JUDGMENT

■ The Debtor is, in our view, correct in her assertion that "[t]he mortgage is merged in a judgment entered in a mortgage foreclosure action" in Pennsylvania. 25 P.L.E. 85 (1960). *See Murray v. Weigle,* 111 Pa. 159, 164, 11 A. 781, 782 (1888); and *Hartman v. Ogborn,* 54 Pa. 120, 122–23 (1867). Our Court of Appeals has recently recognized that the same rule applies "[i]n New Jersey, as in many states, . . ." *In re Roach,* 824 F.2d 1370, 1377 (3d Cir.1987). *See, e.g., In re Coleman,* 82 B.R. 15, 17 (Bankr.D.N.J.1988); *In re McKillips,* 81 B.R. 454, 455–56 (Bankr.N.D.Ill.1987); *In re Brown,* 73 B.R. 306, 308 (Bankr.D.N.J. 1987); *In re Schlecht,* 36 B.R. 236, 240 (Bankr.D.Alas.1983); and *United Companies Financial Corp. v. Brantley,* 6 B.R. 178, 189 (Bankr.N.D.Fla.1980).

The Debtor also appears quite correct in her assertion that, after entry of judgment, "[a] judgment creditor is entitled to interest on the judgment at the legal rate only, even if the rate of interest on the obligation on which the judgment is entered was greater." 10 STANDARD PA.PRAC. 2d 473 (1982). *See Miller v. Reading,* 369 Pa. 471, 87 A.2d 223 (1952); and *Dunbar v. Dunbar,* 9 D. & C.3d 214, 218 (Alleg.Co.C. P.1977). Also pertinent to the instant case on these points is the recent decision in *Chase Home Mortgage Corp. of the Southeast v. Good,* 370 Pa.Super. 570, 537 A.2d 22 (1988), cited by FNMA in its Brief. There, the court allowed mortgagors to pay off the amount of the foreclosure judgment as entered without additional post-judgment interest at the rate established in the mortgage, because the mortgagee had never taken any steps to reassess the damages awarded in the judgment prior to the payoff.

The only response of FNMA to these arguments of the Debtor is that, while they may have constituted the law prior to the enactment of Act No. 6 of 1974, 41 P.S. § 101 et seq. (hereinafter referred to as "Act 6"), the law was changed *sub silentio* by the addition of a right to cure and restore the mortgage to its pre-judgment status to the mortgagor by 41 P.S. § 404 of Act 6.

Unlike FNMA, we find no indicia that Act 6 effected any change in these long-standing principles of Pennsylvania law. Act 6 indeed does allow the mortgagor a pre-sale right to cure or redeem a mortgage and, if the deficiency is cured, the parties are returned to the *status quo ante,* including the restoration of the mortgage. *See* 41 P.S. § 404(c). However, we fail to see why this fact should effect any change in the legal status of the mortgagor and mortgagee when, as here, the mortgagor does *not* cure the delinquency.

By analogy, we observe that, in Illinois, a judgment of foreclosure "is not a final, appealable judgment." *McKillips, supra* 81 B.R. at 454. The foreclosure must thereafter be confirmed by a sale before it becomes "final." *Id.* Yet, in *McKillips,* "this court finds that merger occurs when the judgment is entered, not upon confirmation of the foreclosure sale." *Id.*

Similarly, in New Jersey, an equity of redemption exists for at least a brief period after a foreclosure sale. *Coleman, supra,* 82 B.R. at 17–18; and *Brown, supra,* 73 B.R. at 307–08. Yet, each of these courts concluded that, under the law of that state, a mortgage merged with a foreclosure judgment upon entry of the judgment.

Therefore, it is clear that the vesting of a right in the mortgagor to cure or redeem a mortgage after judgment is not inconsistent with the principle that a mortgage merges into a foreclosure judgment. If a cure or redemption is effected, then and only then is the mortgage reawakened.

Otherwise, it remains merged in the judgment as of the time of the entry of the judgment.

We recognize that most of the cases establishing the principle of merger of a mortgage into a foreclosure judgment are dated. However, we note that the Superior Court of Pennsylvania, in its recent *Chase* decision, implicitly assumes the accuracy of this principle in its decision-making process despite the presence of Act 6. Were it not for the fact that the mortgage in issue there merged with the judgment, it would have been immaterial to the mortgagee's rights that it neglected to reassess the damages. The interest due under the mortgage would have been collectible in any event.

## F. NEVERTHELESS, THE MEASURE OF THE JUDGMENT WITH WHICH THE MORTGAGE MERGES IS THE DAMAGES AS MOST RECENTLY REASSESSED

■ However, having accepted the first premise of the Debtor's arguments supporting her stance, we decline to follow her next steps. The Debtor asks us to consider the measure of the judgment with which the mortgage is merged to be the judgment as originally entered on October 2, 1984. In so doing, the Debtor would have us disregard the reassessment of the damages in the foreclosure judgment in early 1987. This we cannot and will not do despite the Debtor's apparent arguments as to why we should do so, i.e., because there is a defect in the reassessment process and because the Debtor had appealed this decision pre-petition (but which appeal was dismissed "without prejudice" post-petition).

As we recently noted in *In re Gulph Woods Corp.,* 84 B.R. 961, 970 (Bankr.E.D. Pa.1988); and *In re Mosley, Mosley v. Meritor Mortgage Corp. East,* 85 B.R. 942, 951 n. 7 (Bankr.E.D.Pa.1988), a bankruptcy court is limited in its ability to review or go behind apparently valid state court judgments. *Accord, Heiser v. Woodruff,* 327 U.S. 726, 732–37, 66 S.Ct. 853, 855–58, 90 L.Ed. 970 (1946); *Werts v. Federal Nat'l Mortgage Ass'n,* 48 B.R. 980, 985 (E.D.Pa.

1985); and *In re Farrell,* 27 B.R. 241, 245–47 (Bankr.E.D.N.Y.1982.)

The Debtor apparently contends that the state court's reassessment was unconstitutional, as it was allegedly in conflict with *Hines v. Pettit, supra.* We recognize that we do have the power to look behind an unconstitutional state court judgment. *See In re Souders,* 75 B.R. 427, 432–33 (Bankr. E.D.Pa.1987) (use of confession of judgment, which is unconstitutional on its face). However, the confession of judgment procedure skirts judicial scrutiny entirely in the decision-making process. Also, the reassessment procedure was found defective in *Hines* because the Prothonotary merely entered an order at the behest of the mortgagee's praecipe. Here, the reassessment order in issue was entered by a judge, presumably enlightened as to the strictures of *Hines v. Pettit* by the Debtor's able and vigorous counsel. The Debtor failed to present any evidence of the procedure employed by the state court in reassessing the Debtor's damages and hence failed to prove that the procedure utilized here was unconstitutional.

Also, we are uncertain of the legal status of an appeal which has been dismissed "without prejudice," and whether it would be considered timely if filed after the bankruptcy is completed, many months after entry of the judgment from which appeal is taken. We note that it would have been easy for the Debtor to have obtained relief from the automatic stay to pursue the appeal or, at an earlier point, to have attempted to remove the state court action to this court to have preserved her rights. *See In re Telephonics, Inc.,* 85 B.R. 312, 318 & n. 3 (Bankr.E.D.Pa.1988). Had the state court reassessment order been reversed or even stayed on appeal, we may have been inclined to review the merits of the Debtor's contentions as to the invalidity of this judgment. However, since this is not the case, we consider it appropriate to adhere to the state court judgment as reassessed by the state court.

Again, the recent *Chase* decision is pertinent, in that it suggests that a mortgagee may "amend the judgment" in a fore-

closure proceeding by reassessing damages. 537 A.2d at 24. Since, here, FNMA has taken the step which the *Chase* court found was the missing link in the mortgagee's attempt to obtain post-judgment contract-rate interest in that case, we cannot deny it contract-rate interest through the date of reassessment to FNMA here.

## G. WITHOUT CONSIDERING THE DEBTOR'S TILA RECOUPMENT CLAIM, FNMA WOULD BE ENTITLED TO A DISTRIBUTION OF $35,779.62.

We therefore conclude that the starting point for calculation of the sum due to FNMA from the sale proceeds is the $33,843.30 sum of the reassessed judgment as of January 23, 1987, not the $29,253.06 sum of the original judgment as of October 2, 1984. We have determined, however, that the proper calculation of the interest due at the legal rate, which accrues only through the June 1, 1987, date of the bankruptcy filing, is $712.17.[3] We also shall add the $1,224.15 post-judgment cost figure proferred by FNMA to the equation. The Debtor did not contest the legitimacy of the cost figures. We have no evidence that these costs were "paid" other than by FNMA, as they should have been for it to seek reimbursement of same from the Debtor. We hence compute the amount of proceeds due to FNMA, prior to consideration of the alleged TILA violation, to be $35,779.62.

At no point in the record has FNMA presented any evidence to support the $37,429.82 figure set forth on the Proof of Claim filed by GMAC on its behalf, let alone the $38,740.17 figure cited in FNMA's Brief. *See In re Lewis*, 80 B.R. 39, 41 (Bankr.E.D.Pa.1987). The only adjustment that we shall make to the $35,779.62 figure is a downward adjustment of

$1,000.00 for the TILA recoupment sought by the Debtor.

## H. THE DEBTOR IS ENTITLED TO A $1,000.00 TILA RECOUPMENT AGAINST THE SUM DUE TO BE DISTRIBUTED TO FMNA

We believe that, regarding the Debtor's TILA claim, the facts here are indistinguishable from those of *Pinder, supra.* As FNMA points out, the Debtor there testified with more expressions of certainty than did the Debtor here. However, we found the testimony of the *Pinder* Debtor "not wholly persuasive" due to her obvious confusion regarding the identity of the various documents presented to her at settlement. 83 B.R. at 912. The Debtor here, somewhat more candidly than the *Pinder* Debtor, expressed lack of knowledge of the documents given to her. Like the *Pinder* Debtor, she could not locate a TILA disclosure statement in the midst of the "stack of papers" she received at settlement. Moreover, here, in more convincing fashion than in *Pinder,* where we had only the Debtor's assertions of same, the Debtor actually produced the entire "stack of papers," and the TILA disclosure statement was not among them. The testimony of both the Debtor her and in *Pinder* is and was exactly what we would expect from an "average consumer." Like the *Pinder* mortgagee, FNMA presented not a speck of evidence that the Debtor in fact did receive a TILA disclosure statement. As we stated in *Pinder,* we believe that the much more knowledgeable creditor must be charged with the burden of producing a disclosure statement, if asked to do so prior to trial. And, if it is unable to do so, and the consumer presents some evidence supporting a contention that one was never received, we must assume that none exists.

---

**3.** We believe that FNMA's claim arises under the judgment, not the mortgage agreement, rendering 11 U.S.C. § 506(b) inapplicable. Collection of post-petition interest is generally impermissible. *See, e.g., In re Shaffer Furniture Co.,* 68 B.R. 827, 830 (Bankr.E.D.Pa.1987). We compute the interest by multiplying the daily rate of interest at six (6%) percent, i.e., .0001644 times 128 days from January 23, 1987, through May

31, 1987, times $33,843.30. We are willing to enhance FNMA's share of the distribution by allowing it interest on its share of the proceeds after settlement. We believe that distribution should be determined as of the date of settlement, as it is only the inordinate delay in determining what should be distributed to FNMA that held up the distribution of its share of the proceeds to it since that date.

As in *Pinder*, we put little stock in the Debtor's pleading the existence of a TILA disclosure statement. 83 B.R. at 912–13. *See In re Matzulis*, 74 B.R. 552, 554–56 (Bankr.E.D.Pa.1987), *remanded*, C.A. No. 8704390 (E.D.Pa. Nov. 18, 1987) (debtor permitted to amend the precise TILA violations claimed at any time prior to final decision). Unlike the claims of the creditor in *Matzulis*, we do not understand FNMA to be claiming any surprise due to the Debtor's change in her theory of TILA liability. Therefore, we conclude that the result here is controlled by our decision in *Pinder*, and we shall reduce FMNA's share of the distribution of the sale proceeds by the $1,000.00 recoupment penalty, to $34,-779.62.

## I. CONCLUSION

The sum of $34,779.62, plus its share of the interest earned on the sale proceeds in the interim, *see* page 438 n. 3 *supra,* is what we hold that FNMA is entitled to receive from the distribution of the proceeds from the sale of the Debtor's home, as set forth in the following Order.